Mary Carol THOMPSON, Appellant,

v.

John P. THOMPSON et al., Appellees.

No. 18166.

Court of Civil Appeals of Texas, Dallas.

Sept. 27, 1973.

Frederick J. Fowler, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellant.

Stephen A. Coke, Blanchette, Shelton & James, Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

This is an appeal from a summary judgment denying partition of certain properties. We reverse.

Mary Carol Thompson (McKean) and John P. Thompson were married on June 7, 1948, and lived together as husband and wife until January 22, 1969, at which time Mary Carol Thompson was granted a final judgment of divorce from John P. Thompson by the Domestic Relations Court No. 2 of Dallas County, Texas in Cause No. 68–4334–DR/2. Mr. Thompson, a prominent business man in Dallas, and his wife acquired a considerable community estate during their marriage. Prior to the actual divorce decree, and in contemplation thereof, the parties, and their attorneys, endeavored to reach a property settlement agreement. It is quite evident from the record that a high level of confidence and trust existed between the parties and their attorneys and therefore no sworn inventory of the separate and community property of the parties was required of Mr. Thompson, the manager of the community estate. Mr. Thompson's attorneys volunteered to and did provide Mrs. Thompson's attorneys with what purported to be full and complete financial information regarding the separate and community property of the parties. Mr. Thompson's attorneys also drafted a proposed property settlement agreement which was very similar to the

final property settlement agreement executed by the parties. Mrs. Thompson and her attorneys relied upon the representations made by Mr. Thompson's attorneys that they had been furnished with full and complete information concerning the properties. Based on such representations they permitted Mrs. Thompson to execute the property settlement agreement without making further investigation or verification of the information supplied by Mr. Thompson. The final property settlement agreement attempted to dispose of the property listed in the accounting furnished by Mr. Thompson's attorneys.

At the outset of the agreement signed by the parties on January 16, 1969, it was clearly stated that the parties desired and intended to effect a fair and equitable partition of all of their community property and "the parties have negotiated the provisions of a property settlement agreement in order to make amicable settlement of all issues which may exist between them and have agreed that the community property shall be vested and distributed as hereinafter provided."

Pursuant to Article I A "Issues Settled" it was provided:

"The subject matter of this Agreement is the settlement of all issues which may exist between the Husband and the Wife, including but without limiting the generality thereof:

1. *Property*

The respective rights of the Husband and Wife to all property, whether personal, real or mixed, and whether community or separate, now in their name or possession."

Then follows itemization of automobiles, cash, club memberships, stocks, securities and partnership interests. In connection with the partnership interests the wife agreed that the partnership interest in Jupiter, Ltd and 7-Eleven Ranch, together with other interests in certain companies, shall be the sole property of the husband.

Provision was then made for division of oil properties, life insurance, custody of the children, contractual alimony, assumption of debts, taxes and attorneys' fees.

In connection with payment of alimony it was provided:

"The Husband agrees to pay the Wife alimony in the amount of $600,000.00 in complete discharge of any obligation to the Wife, but not to the children, arising out of the marital or family relationship hitherto existing between the Husband and the Wife, and in release of the Wife of any claim of any nature whatsoever to the separate property of the Husband or any claim to the community property designated to be the property of the Husband as hereinabove described."

Finally, in Article XIII A "Release of Claims and Rights Against Other Spouse," it was provided:

"In consideration of all the premises, each spouse hereby releases all claims and rights, which such spouse ever had, now has, or might hereafter have, against the other by reason of their former relationship as Husband and Wife, or otherwise, excepting only claims and rights of such spouse created and outstanding against the other pursuant to the terms of the Divorce Decree rendered by the Court, or the terms of this Agreement; it being the intent hereof that each spouse accepts the provisions of this Agreement in full release and settlement of any and all claims and rights against the other."

The agreement does not contain a residuary clause whereby each party conveys to the other such property or property rights not specified in the agreement.

The final judgment of divorce entered on January 22, 1969, recites that settlement and division of the community property owned by the parties has been made and the property settlement agreement duly filed in the cause and the court expressly approves same as a part of the judgment.

Subsequent to the rendition of the divorce decree Mrs. Thompson, from information supplied by her accountant, discovered the existence of two joint venture interests which included two apartment projects known as "The Cloverleaf Apartments" and "The Mapleleaf Apartments." None of the documents furnished by Mr. Thompson to Mrs. Thompson prior to the property settlement agreement contained any reference to these joint venture interests. Neither of the interests in question were mentioned in any way in the property settlement agreement finally signed by the parties and adopted by the trial court as a part of the divorce decree.

Concerning the Mapleleaf Apartments the record is without dispute that on January 20, 1968, John P. Thompson entered into a joint venture agreement with four individuals wherein Mr. Thompson acquired a one-third interest in the property comprising the Mapleleaf Apartments. The joint venture began doing business on November 1, 1968. The joint income tax return of Mr. and Mrs. Thompson for the year 1968 shows that the husband claimed that he owned an interest in the Mapleleaf Apartments during 1968 and claimed a tax deductible loss on the operation thereof. Thus it would appear without dispute that the property interest in the Mapleleaf Apartments was definitely a part of the community estate of Mr. and Mrs. Thompson at the time of the divorce decree.

With reference to the Cloverleaf Apartments the record reveals that Mr. Thompson entered into a joint venture agreement concerning this property on September 18, 1967, with two other individuals who were also joint venturers in the Mapleleaf Apartments. This agreement expressly states that its effective date shall be the day conveyance is made to the venture of the real property involved. Such date is established as September 10, 1969. There is also evidence in the record that the Cloverleaf Apartment project actually began doing business for the benefit of the joint venture on August 1, 1968. This fact

is revealed by the Cloverleaf tax return for 1968 which revealed that Mr. Thompson owned a 33⅓ per cent interest in such venture. In the joint income tax return for 1968 filed by Mr. Thompson he claimed an interest in the Cloverleaf Apartments during 1968 and asserted a taxable loss on that operation for the year 1968.

Contending that she was not aware of the existence of the two joint venture interests at the time she entered into the property settlement agreement with her husband, and that her husband had not advised her of the existence of such property interests, Mrs. Thompson instituted this suit seeking partition of the property interests in the two joint ventures relating to the Mapleleaf and the Cloverleaf Apartments. She made no effort to attack or set aside the divorce decree which had incorporated the property settlement agreement previously made. In response to this action Mr. Thompson took the position that insofar as the Mapleleaf Apartments was concerned such property rights were disposed of by the prior judgment of divorce and therefore such action was barred as res judicata. Insofar as the Cloverleaf Apartment project is concerned Mr. Thompson asserted that the property rights in this venture did not come into being until after the divorce decree in January 1969 and therefore the community estate had no interest therein.

The trial court sustained the motion for summary judgment filed by Mr. Thompson, and his joint venturers, and decreed that Mrs. Thompson had no interest in the two properties in question.

Appellant predicated this appeal on one point of error which is that the trial court erred in sustaining the motion for summary judgment. In response appellees rely upon three counterpoints. First, they contend that they were entitled to the summary judgment as a matter of law because all issues regarding the property rights of Mr. and Mrs. Thompson were litigated to a fi-

nal determination in Cause No. 68–4334–DR/2. Secondly, they contend that such action is barred and they are therefore entitled to a judgment as a matter of law because the present suit amounts to a collateral attack on the prior judgment. Thirdly, appellees contend that the trial court correctly granted summary judgment for appellees with regard to the Cloverleaf Apartments because Mr. Thompson did not acquire any interest in same until subsequent to the termination of the marriage.

The correct resolution of the chief question here presented is whether the summary judgment proof tendered by appellees establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of appellant's cause of action so that appellees are entitled to a judgment as a matter of law. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.1970).

■ The success of appellees' defense of the trial court's judgment depends upon the validity of the contention advanced that all community property owned by the husband and wife was effectively divided by the property settlement agreement which became merged into the final divorce decree. If the record reveals, as a matter of law, that all the property owned by the community was disposed of by agreement and judgment then the instant suit would be impermissible. 3 Speer, Marital Rights in Texas 329, § 889. However, if the divorce decree fails to accomplish the disposition of the property rights of the parties then the parties remain owners of the property as tenants in common. Ex parte Williams, 160 Tex. 314, 330 S.W.2d 605 (1960) and Busby v. Busby, 457 S.W.2d 551 (Tex.1970). In this event the law is well settled that either party to the divorce action may subsequently demand partition of the property which has not previously been divided. Kirberg v. Worrell, 44 S.W.2d 940 (Com.App., Holding approved 1932) and Busby v. Busby, 457 S.W.2d 551 (Tex.1970).

■ To resolve the paramount question here presented we first look to the terms and provisions of the property settlement agreement to determine their intent concerning disposition of their respective property rights. To arrive at this determination we are bound by the express stated intent of the parties as manifested within the four corners of the instrument itself. Steeger v. Beard Drilling, Inc., 371 S.W.2d 684 (Tex.1963). Having carefully examined the instrument, and the summary judgment evidence relevant thereto, we are convinced that both parties did, in good faith, intend to accomplish a full and complete division of all of their property. This intent is clearly expressed in the preliminary part of the agreement above quoted.

However, having clearly expressed such intent, an examination of the remainder of the instrument as well as the summary judgment evidence would demonstrate that the parties did not effectively carry out such intent by dividing all of their property. This fact is made manifest by the provisions of the instrument which very carefully enumerate and itemize the various items of property including money, stocks, securities and partnership interests. In connection with the partnership interests it is interesting to note that appellee Thompson testified by deposition that prior to the execution of the agreement he had insisted that all of his partnerships would be his separate property and that his wife was to retain no interest in any of such partnerships or joint venture businesses. To this end the instrument itself specifically awarded to the husband as his separate property certain specified partnership interests as above set forth.

Appellee Thompson concedes that the joint venture interest known as the Mapleleaf Apartments was in being and was a part of the community estate at the time of the divorce decree. He also, in his deposition, candidly concedes that this property was omitted from the property settlement agreement due to inadvertence and over-

sight. He said that it was his desire for the agreement to be full and complete and include all property of the community. He said "It never dawned on me" that the Cloverleaf and Mapleleaf Apartments were not listed in the agreement. However, he now argues in support of the trial court's judgment that since the property settlement agreement purports to dispose of all of the community property of the parties it therefore must have done so and that any property not specifically awarded to either party became his separate property. We cannot accept the logic of this argument. In the absence of a "catch all" or residuary clause in the agreement specifically providing for the disposition of property not specifically described therein it could not reasonably be argued that such undisclosed property would be awarded to one party or to the other.

■ The importance of the itemization and description of the various pieces of property becomes evident in the reading of that part of the agreement entitled "A. Amount and Payment of Alimony" wherein the parties expressly agree that such alimony payment effects a release by the wife of any claim of any nature whatsoever to the separate property of the husband or any claim to the community property designated to be the property of the husband "hereinabove described." Obviously this means that the wife releases any claim she may have to the community property "hereinabove described." The items of property referred to are set forth in specific terms in the instrument but none of these make mention of the Cloverleaf and Mapleleaf joint venture interests. To give verity to the contention advanced by appellee Thompson would result in this court making a contract for the parties. This we cannot do. Radford v. McNeny, 129 Tex. 568, 104 S.W.2d 472 (1937).

■ Appellee Thompson also seizes upon the provisions of Article XIII, A "Release of Claims and Rights Against Other Spouse" as being sufficiently broad to constitute a release of property rights by appellant. In this provision it is, indeed, agreed that each spouse releases "all claims and rights," which such spouse ever had, now has, or might hereafter have, against the other by reason of their former relationship as husband and wife or otherwise. Again it is provided that: " * * * it being the intent hereof that each spouse accepts the provisions of this Agreement in full release and settlement of any and all claims and rights against the other." We conclude that this constitutes a mutual release of personal claims and has no relation to property rights. An interest in community property is not a claim or right *against* the other spouse. The Commission of Appeals in Kirberg v. Worrell, 44 S.W.2d 940 (Holding approved 1932), in discussing a similar state of facts, concluded that the judgment, which adopted the property settlement agreement and release, could not be said to have operated to give the husband any better title to the property in dispute than it gives to the wife.

■ We conclude that the divorce decree does not constitute an adjudication or disposition of the community property interest in the two joint venture projects known as Cloverleaf and Mapleleaf Apartments. Such property was not brought within the jurisdiction of the divorce court so that it cannot be said that such divorce decree amounts to a bar against bringing the subsequent action. Novy v. Novy, 231 S.W.2d 780 (Tex.Civ.App.—Austin 1950, writ dism'd), and Kirberg v. Worrell, supra. As so aptly stated in 3 Speer, Marital Rights in Texas 329, § 889: "If the decree does not consider the property rights of the parties, they are unaffected by it and may be asserted anywhere and any time the occasion may arise. * * * It is res judicata as to the property awarded. But the decree is binding only with reference to such property as is brought within the jurisdiction of the court and the scope of its adjudication. If property was omitted from such consideration by either, it might

authorize the opening of the decree as to the property, or a separate suit with reference to it, as the divorce judgment could not be an adjudication of their rights in property not considered by the court."

Appellant's points concerning collateral attack and res judicata are obviously without merit and are overruled.

We turn now to appellees' contention that insofar as the Cloverleaf Apartment joint enterprise is concerned such property interest therein did not come into existence until subsequent to the rendition of the divorce decree and is therefore not a proper subject for partition in this suit. The record reveals that there is some evidence of bona fide dispute as to exactly when appellee Thompson acquired an interest in the Cloverleaf Apartment. It is evident that on or about September 19, 1967, Thompson and others did execute a joint venture agreement, the purpose of which being designated as to "own, develop, operate, improve, lease, sell and otherwise deal with the venture property" known as the Cloverleaf Apartments. This instrument contained a provision that: "The effective date of this agreement shall be the date of the conveyance to the joint venture of the venture property * * *." It was not until the 10th day of September 1969, eight months after the date of the divorce decree, that the Cloverleaf property was actually transferred to the joint venture by warranty deed. However, the tax returns for the Cloverleaf joint venture for the years 1968, 1969 and 1970 reflect the joint venture commenced business on August 1, 1968. It is also in evidence that Mr. and Mrs. Thompson's joint income tax return for 1968 (prepared by Mr. Thompson's accountant) reveals that Mr. Thompson claimed that he or they owned an interest in the Cloverleaf Apartments during 1968 and claimed a taxable loss on that operation.

 Generally a joint venture is governed by the same rules as a partnership. J. Crane and A. Bromberg, Partnerships § 35 (1968); Weatherford v. Lee, 364 S.W.

2d 730 (Tex.Civ.App.—San Antonio 1963, writ ref'd n. r. e.). The rules governing the determination of the existence of a partnership should therefore be applied to the instant case to determine if there is a fact question as to whether or not the venture was in existence at the time of the divorce decree.

 It is, of course, the general rule that when an agreement provides a condition precedent to the formation of a partnership, it will not come into existence until the condition has been met. Chancellor v. Brachman, 41 S.W.2d 1015 (Tex. Civ.App.—Fort Worth 1931); Arnold v. Caprielian, 437 S.W.2d 620 (Tex.Civ.App. —Tyler 1969). Appellant seeks to apply this rule by contending that the conveyance of the land to the venture was a condition precedent to the formation of the venture. However, such condition precedent may be waived and if the parties actually proceed with the business they may be held as partners even though the condition precedent has not been satisfied. Miller's Indemnity Underwriters v. Patten, 238 S.W. 240 (Tex.Civ.App.—Amarillo 1922, aff'd, 250 S.W. 154 (1923)). Thus the language in the agreement does not conclusively establish that the venture was not in existence at the time of divorce if there is evidence that the partnership was in operation. Under the Texas Uniform Partnership Act certain rules are set out for determining the existence of a partnership. Vernon's Tex.Rev.Civ.Stat.Ann. art. 6132b § 7 (1970). This statute, among other things provides that the receipt of a share of the profits is prima facie evidence of the existence of the partnership. While we do not have a sharing of the profits here, there was a sharing of losses. Section 18 of the Texas Uniform Partnership Act provides that each partner is to share equally in the profits and surpluses, and that he must contribute towards the losses according to his share in the profits. This would imply that a sharing of the losses is some evidence of the existence of the partnership. See 1 R. Rowley, Partnerships § 7.6(f) (1960). Since Thompson was claiming that

he suffered a taxable loss on the operation in 1968 it would seem inconsistent that he now claims that the venture had not come into being. There is also other evidence of the existence of the venture prior to the divorce in the form of the financial summary prepared by Mr. Thompson's personal accountant in that it lists the venture as having commenced business on "8–1–68."

It is quite evident to us that there is a genuine issue of fact as to whether or not the Cloverleaf venture was in existence at the time of the divorce and such fact question would preclude summary judgment with reference to such property right. This is especially true since this was a specific ground listed in support of the motion for summary judgment. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.1970).

We sustain appellant's point of error and hold that the trial court improvidently granted the motion for summary judgment in favor of appellees. Accordingly, we reverse the judgment and remand the cause to the trial court for further proceedings.

Reversed and remanded.