**PARDCO, a Texas partnership, and Rick Browning, Appellants,**

v.

**Leroy F. SPINKS and William B. Duff, Appellees.**

No. 08–91–00418–CV.

Court of Appeals of Texas, El Paso.

June 24, 1992.

Rehearing Overruled July 22, 1992.

**650**

Stewart McKeehan, Browning & McKeehan, P.C., Odessa, for appellants.

Jack Q. Tidwell, Denis Dennis, MacMahon, Tidwell, Hansen, Atkins & Fowler, P.C., Odessa, for appellees.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a take-nothing judgment entered in a case tried to the court, in which one partner of an insolvent joint venture sought to recover contribution from two other partners based upon his claim of a disproportionate payment to settle a claim by a bank. We affirm.

### Facts

This case was tried upon a written stipulation of facts, which had numerous exhibits attached.

Several parties, including Leroy F. Spinks, William B. Duff and Pardco, a Texas partnership, entered into the Westlake Properties Joint Venture Agreement in January 1982. That agreement provided that the net profits and losses of the joint venture were to be allocated and charged to each venturer in specific percentages. Glyn L. Day, Jr. was allocated 51½ percent, Spinks and Duff were each allocated 10 percent and Pardco only 1 percent. Later, Pardco's interest was assigned to Rick Browning.

By June 1985, Westlake Properties was insolvent and it owed more than $1.5 millon to MBank Odessa. After the bank posted notice for a foreclosure sale on certain real estate in which it was anticipated that there would be a substantial deficiency, five of the joint venturers on June 3, 1985 entered into a settlement agreement with the bank to discharge the debt owed by Westlake Properties. As part of the agreement, $225,000 was paid to the bank, and the bank agreed not to seek any deficiency judgment. Of that amount, Spinks paid $60,000, Duff paid $35,000 and Browning paid $30,000. In addition, Spinks and Duff each paid an additional $35,447.87 to satisfy other debts owed by the joint venture.

By 1987, Glyn Day, Jr. had filed for bankruptcy and several other joint venturers were insolvent. Browning made demand upon Spinks and Duff for the amount he claimed to have paid to the bank in excess of his obligation under the Joint Venture Agreement.

This suit was filed in which he asserted that the pro rata share of debts to be assumed by the solvent joint venturers equalled 37.736 percent for both Spinks and Duff and 3.774 percent for himself. Upon that basis, he contended that his pro rata part of the $225,000 paid to the bank

should have been $8,491.50 and that Spinks and Duff should have each paid $84,906. He sought to recover $21,508.50 as an overpayment. The trial court denied recovery.

### Findings of Fact and Conclusions of Law

In response to the Appellants' request, the trial court filed Findings of Fact and Conclusions of Law. The findings included the amount of money each partner in the joint venture paid to MBank and the other creditors to satisfy debts of Westlake Properties. The court also found that at the time of the payment to the Bank, Westlake Properties and six of the partners were insolvent and that Glyn Day, Jr. became bankrupt in 1987. The court concluded that Paragraph IV of the Joint Venture Agreement, which provided that the liability of each partner should be the percentage set opposite his name in the agreement, controlled over Section 40(d) of the Texas Uniform Partnership Act, which requires solvent partners to contribute the amount necessary to satisfy liabilities in the relative proportions in which they share the profits, after excluding insolvent partners.

### Point of Error

By a single point of error, the Appellants assert that the trial court erred in holding that the Joint Venture Agreement eliminated their right of contribution and that under the stipulated facts, they were entitled to judgment against the Appellees.

### Decision

■ The Appellants argue that since the facts are undisputed and agreed to in the stipulation filed in the trial court that the only issue for our determination is whether the Joint Venture Agreement contains a provision eliminating their right of contribution from the Appellees or does the Texas Uniform Partnership Act provide such right. The Joint Venture Agreement provides in Paragraph IV:

The obligation and liability of each Joint Venturer, as among themselves, with respect to any and all liabilities in connection with the business of the Joint Venture, shall be the percentage set opposite his name.

The same paragraph lists profits and losses allocated and charged to Pardco at 1 percent.

Section 40(d) of the Texas Uniform Partnership Act provides as follows:

The partners shall contribute, as provided by Section 18(a) the amount necessary to satisfy the liabilities; but if any, but not all, of the partners are insolvent, or, not being subject to process, refuse to contribute, the other partners shall contribute their share of the liabilities, and, in the relative proportions in which they share the profits, the additional amount necessary to pay the liabilities.

Tex.Rev.Civ.Stat.Ann. art. 6132b (Vernon 1970).

■ We recognize that generally a joint venture is governed by the same rules as a partnership. *Hackney v. Johnson*, 601 S.W.2d 523 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.); *Thompson v. Thompson*, 500 S.W.2d 203 (Tex.Civ.App.—Dallas 1973, no writ).

■ Initially, we conclude that the Joint Venture Agreement and Section 40 of the Partnership Act are not contradictory. Both initially provide that losses should be borne in the same relationship to the percentage of profits they are entitled to receive. The agreement is silent as to the effect insolvency of some of the partners would have upon the obligations of the solvent partners. Thus, we conclude that the Partnership Act is controlling on the issue which the agreement does not address. *Park Cities Corporation v. Byrd*, 534 S.W.2d 668 (Tex.1976); *Shindler v. Harris*, 673 S.W.2d 600 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). But, that conclusion does not dispose of this case.

The Partnership Act provides that in settling accounts, the rules for proportionate payments by solvent partners shall control, *subject to any agreement to the contrary.* Tex.Rev.Civ.Stat.Ann. art. 6132b, § 40. In this case, the five solvent partners entered into an agreement among themselves and

with the bank in order to avoid a deficiency judgment after the foreclosure sale. By that agreement, they and they alone decided what each would contribute to avoid a deficiency judgment. That *agreement was contrary* to the provisions of the Partnership Act and it became an agreement by which each solvent partner was bound. They may not now claim to the contrary. Undoubtedly, that agreement resulted from pressure by the bank to have its loan paid; it resulted from pressure upon each partner to avoid a substantial judgment taken for any deficiency after the foreclosure sale. But, no one seeks to have the agreement set aside because of duress. Having voluntarily agreed to change the percentage that each solvent partner would pay, each partner is bound by his agreement and payment. Point of Error No. One is overruled.

The judgment of the trial court is affirmed.