**Reverse in part and render judgment; Opinion Filed July 18, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-01383-CV

**ENTERPRISE PRODUCTS PARTNERS, L.P. AND ENTERPRISE PRODUCTS OPERATING L.L.C., Appellants**
**V.**
**ENERGY TRANSFER PARTNERS, L.P. AND ENERGY TRANSFER FUEL, L.P., Appellees**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-12667-M**

## OPINION

Before Justices Myers, Stoddart, and Whitehill
Opinion by Justice Myers

In this case, the jury found Enterprise Products Partners, L.P. ("Enterprise") was in a general partnership with Energy Transfer Partners, L.P. ("ETP") and that Enterprise breached its duty of loyalty as a partner to ETP. The trial court's judgment awarded ETP actual damages of $319,375,000 and disgorgement of $150 million. Enterprise[1] brings four issues on appeal contending: (1) the trial court erred by denying Enterprise's motions for directed verdict and JNOV because the parties' written agreements contained unperformed conditions precedent that

---

[1] The parties' documents in this appeal state the appellants are (1) Enterprise Products Partners, L.P. and (2) Enterprise Products Operating LLC and the appellees are (1) Energy Transfer Partners, L.P. and (2) Energy Transfer Fuel, L.P. The trial court's judgment, however, awards no relief to Enterprise Products Operating LLC or Energy Transfer Fuel, L.P., nor does it impose any liability on them. ETP filed a notice of cross-appeal, but its brief does not assert any cross-points.

as a matter of law precluded the forming of the disputed partnership;[2] (2) the jury charge omitted a necessary instruction and wrongly imposed the burden of proof on Enterprise; (3) the award of actual damages was not supported by legally and factually sufficient evidence; and (4) the disgorgement award was unsupported by the evidence, unauthorized by statute, and contrary to principles of equity.  As discussed below, we conclude that:

1. The unfulfilled conditions precedent in the parties' written agreements precluded forming the alleged partnership unless ETP obtained a jury finding that the parties waived those conditions precedent;

2. ETP's failure to request such a finding meant that it had to establish waiver of the conditions precedent as a matter of law; and

3. ETP did not prove as a matter of law that the parties waived the conditions precedent.

Accordingly, we reverse the trial court's judgment as to ETP's claims against Enterprise and render judgment that ETP take nothing on those claims.

## BACKGROUND

ETP and Enterprise are builders and operators of oil and gas pipelines.  At the beginning of 2011, there was a glut of crude oil in storage facilities in Cushing, Oklahoma, but there were no pipelines running south from Cushing to the refineries in the Houston area.  The Seaway Pipeline, which carried oil north from Houston to Cushing, was jointly owned by Enterprise and ConocoPhillips.  ConocoPhillips refused Enterprise's requests that they modify the pipeline to carry oil south from Cushing to Houston.

In early 2011,[3] Enterprise approached ETP about potentially working together to build a pipeline transporting crude oil from Cushing to Houston.  ETP owned the Old Ocean Pipeline, which was a natural-gas pipeline running north from Houston to just south of Dallas.  Enterprise

---

[2] Enterprise's first issue, as set forth in its appellant's brief, is: "Did the parties' three written agreements preclude the formation of a partnership?"  Enterprise stated that it "preserved this issue by moving for directed verdict and JNOV."  However, Enterprise never expressly identified in the statement of the issue or in the argument the trial court's error warranting reversal.  We construe briefs liberally, and we conclude appellants intended to assert the trial court erred by denying the motions for directed verdict and JNOV.

[3] Unless otherwise noted, all dates are during the year 2011.

thought the Old Ocean Pipeline could be converted to carry crude oil south, which would save considerable expense and time in building the Cushing-to-Houston pipeline. ETP agreed to work with Enterprise on determining the viability of the project. They called the proposed pipeline the Double E Pipeline.

Before beginning work, the parties signed three agreements. The March 10 Confidentiality Agreement provided safeguards for the parties to exchange confidential information. The April 21 Letter Agreement stated the parties were "entering discussions" concerning building and operating a pipeline between Cushing and Houston, and the parties included an attached Term Sheet that contained the general terms for the potential transaction. The Term Sheet stated the ownership structure for the construction and operation of the pipeline would be a limited liability company with equal representation between ETP and Enterprise. The April 27 Reimbursement Agreement provided that the parties were still negotiating "definitive agreements" but provided that Enterprise could begin the engineering-design work before the parties executed definitive agreements. The Reimbursement Agreement also provided that ETP would reimburse Enterprise for half the expenditures to third parties. All three agreements contained provisions purporting to limit the parties' obligations to one another.

After executing the three agreements, ETP's and Enterprise's engineering and marketing executives worked together to determine whether the pipeline would be economically feasible. They agreed that, before building the pipeline, they would need oil shippers to commit during an "open season"[4] to shipping at least 250,000 barrels per day for ten years at certain rates. The companies' marketing executives then traveled around the country trying to convince shippers to

---

[4] Before pipeline developers break ground on the construction of a new pipeline, which can cost billions of dollars, the developers seek long-term commitments to ship oil through the pipeline. Shippers are allowed to sign long-term contracts during a period called an "open season." During the open season, a shipper can sign a Transportation Services Agreement, or TSA, agreeing to ship a certain quantity of oil at a certain rate for a certain term if the pipeline is built. Before a pipeline company commits to building a pipeline, the company tries to obtain a minimum level of shipping commitments through TSAs. The benefit to the shipper from committing during the open season is that the rates offered during an open season to shippers willing to make a long-term shipping commitment are usually lower than the rates charged to "walk up" shippers who do not commit.

commit to ship on the proposed pipeline. Enterprise and ETP learned that shippers were not interested in shipping oil from Cushing to Houston on a stand-alone pipeline at the offered rates. Instead, shippers wanted the pipeline to be part of a larger network that could ship oil from Canada to Houston. Enterprise and ETP also learned that their rates were higher than those of other pipeline builders that were considering building a Cushing-to-Houston pipeline.

Enterprise suggested to ETP that instead of using ETP's Old Ocean Pipeline, they build a new, larger pipeline in the Seaway Pipeline right-of-way and that they consider adding a third participant to the project. ETP agreed to these changes.

Despite the efforts of ETP's and Enterprise's marketing executives, the open season closed on August 12 with only one shipper agreeing to ship on the Double E Pipeline, and it committed to ship 100,000 barrels per day for ten years, well below the parties' agreed minimum-commitment requirement of 250,000 barrels per day. On August 15, Enterprise contacted ETP and terminated its participation in the Double E project.

About two weeks before the end of the open season, Enterprise had discussions with Enbridge (US) Inc., which operated a pipeline system from Alberta, Canada to Cushing and was in the process of determining whether to extend its network with a pipeline running from Cushing to Houston. Enterprise told Enbridge that if the open season failed to garner sufficient shipping commitments, then Enterprise was interested in pursuing a Cushing-to-Houston pipeline with Enbridge. Enterprise did not disclose these communications to ETP. The day after Enterprise withdrew from the Double E Pipeline project with ETP, Enterprise's executives met with Enbridge's executives, and Enterprise and Enbridge agreed to work together on the pipeline. Before they began construction on the pipeline, however, ConocoPhillips announced it would sell its half of the Seaway Pipeline. Enterprise and Enbridge agreed that Enbridge would purchase ConocoPhillips's interest in the Seaway Pipeline. They then changed their plan from

building a new pipeline following the Seaway Pipeline to using the Seaway Pipeline itself and modifying it to flow south from Cushing to Houston. Once that was accomplished, Enterprise and Enbridge planned to build a second pipeline in the Seaway Pipeline right-of-way. Enterprise and Enbridge received sufficient commitments from shippers for their project, and they began operating the pipeline from Cushing to Houston.

## The Litigation

On September 30, ETP sued Enterprise for breach of joint enterprise and breach of fiduciary duty.[5] ETP's case against Enterprise, as presented in its live petition, the evidence, and the jury charge, was that ETP and Enterprise had a partnership to "market and pursue a pipeline from Cushing, Oklahoma to the Texas Gulf Coast." Their work on the Double E project imbued both ETP and Enterprise with knowledge about the pipeline market, the requisites for a successful pipeline venture between Cushing and the Gulf Coast, and the identities of shippers interested in transporting oil on such a pipeline and at what terms. According to ETP, if Enterprise or ETP was to use its knowledge of these matters to build a pipeline between Cushing and the Gulf Coast, the construction and operation of the pipeline would constitute a business opportunity of the Double E partnership. ETP asserted that Enterprise usurped that business opportunity by teaming with Enbridge to build the pipeline while not disclosing its use of the business opportunity to ETP. As an equal partner with Enterprise in the Double E partnership, ETP argued that Enterprise owed a duty of loyalty to ETP to account for the profits from its usurpation of Double E's business opportunity. ETP asserted that Enterprise breached this duty

---

[5] ETP also brought causes of action against Enterprise for breach of joint venture agreement, breach of partnership agreement, unfair competition, and breach of confidentiality agreement, but it nonsuited them. ETP also brought a cause of action for declaratory judgment seeking a declaration that the Term Sheet did not contain any binding conditions precedent to the formation of a partnership. The trial court did not make any declarations, and ETP does not appeal the trial court's failure to do so. ETP also listed as "causes of action" its requests for a constructive trust, exemplary damages, and attorney's fees. However, these are remedies, not causes of action.

ETP sued Enbridge for tortious interference with existing contract and with prospective business relations, unfair competition, and conspiracy and aiding and abetting breach of fiduciary duty. ETP nonsuited the tortious-interference and unfair-competition claims and the jury found Enbridge was not "part of a conspiracy to breach Enterprise's duty of loyalty to ETP." The trial court's judgment ordered that "ETP takes nothing by its claims against Enbridge."

and owes ETP fifty percent of the discounted net profits that Enterprise would receive during the lifetime of the Seaway Pipeline with Enbridge.

At the end of the four-week trial, the jury found that ETP and Enterprise "create[d] a partnership to market and pursue a pipeline project to transport crude oil from Cushing, Oklahoma to the Gulf Coast"; Enterprise failed to prove it complied with its duty of loyalty as a partner; Enterprise withdrew from the partnership on August 15, 2011; $319,375,000 would compensate ETP for its damages proximately caused by Enterprise's breach of its duty of loyalty; and the benefit to Enterprise from its breach of its duty of loyalty was $595,257,433.

The trial court awarded ETP the damages of $319,375,000 found by the jury, plus interest. The court also awarded ETP disgorgement against Enterprise of $150 million.

## PRECLUSION OF PARTNERSHIP BY CONDITIONS PRECEDENT IN WRITTEN AGREEMENTS

In its first issue, Enterprise contends that the trial court erred by denying Enterprise's motions for directed verdict and for JNOV because its written agreements with ETP prohibited the formation of a partnership without approvals by the parties' respective boards of directors and executed and delivered definitive agreements, neither of which occurred.

A directed verdict or judgment notwithstanding the verdict is warranted when the evidence is such that no other verdict can be reached and the moving party is entitled to judgment as a matter of law. *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 645 (Tex. App.—Dallas 2015, no pet.); *see City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("[T]he test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review.").

Deciding this issue requires the interpretation and application of statutory and contractual provisions. When construing statutes, we attempt to ascertain and effectuate the legislature's intent. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). We start with the

plain and ordinary meaning of the statute's words. *Id.* If a statute is unambiguous, we generally enforce it according to its plain meaning. *Id.* We read the statute as a whole and interpret it so as to give effect to every part. *Id.*; *see also Phillips v. Bramlett*, 288 S.W.3d 876, 880 (Tex. 2009) ("We further try to give effect to all the words of a statute, treating none of its language as surplusage when reasonably possible.").

Likewise, when construing a contract, our primary goal is to determine the parties' intent as expressed in the terms of the contract. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law. *Chrysler Ins. Co.*, 297 S.W.3d at 252; *Coker*, 650 S.W.2d at 393. A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393; *United Protective Servs., Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App.—Dallas 2005, no pet.). We review an unambiguous contract de novo. *Chrysler Ins. Co.*, 297 S.W.3d at 252.

The three documents relied on by Enterprise are (1) the Confidentiality Agreement effective March 10, (2) the Letter Agreement with the attached Term Sheet signed April 21, and (3) the Reimbursement Agreement signed April 27. The Letter Agreement contains the clearest language, so that is the one we will consider.

The Letter Agreement stated the parties were entering negotiations to form a joint venture for constructing and operating a pipeline, and the Term Sheet attached to the agreement set out the proposed terms they expected would govern the joint venture, including that the parties would form a limited liability company to build and operate the pipeline. The Letter Agreement also stated,

> Neither this letter nor the JV Term Sheet create any binding or enforceable obligations between the Parties and . . . *no binding or enforceable obligations*

*shall exist between the Parties with respect to the Transaction unless and until the Parties have received their respective board approvals and definitive agreements memorializing the terms and conditions of the Transaction have been negotiated, executed and delivered by both of the Parties.* Unless and until such definitive agreements are executed and delivered by both of the Parties, either [Enterprise] or ETP, for any reason, may depart from or terminate the negotiations with respect to the Transaction at any time without any liability or obligation to the other, whether arising in contract, tort, strict liability or otherwise.

(Emphasis added.) The Letter Agreement defined the "Transaction" as "a proposed joint venture transaction involving the construction (or conversion, as applicable) and operation of a pipeline to move crude oil from Cushing, Oklahoma to the Houston, Texas market."

The question before us is whether this Letter Agreement created conditions precedent to the formation of a partnership, which, being unmet, prevented the parties from forming the alleged partnership through their conduct in this case. In Texas, "an association of two or more persons to carry on a business for profit as owners creates a partnership, regardless of whether . . . the persons intend to create a partnership . . . ." TEX. BUS. ORGS. CODE ANN. § 152.051(b) (West 2012).

Enterprise argues the Letter Agreement created two conditions precedent that had to be fulfilled before a partnership could exist: (1) approvals by both parties' boards of directors and (2) executed and delivered definitive agreements for the "Transaction." Enterprise asserts that because the parties never received their boards of directors' approvals and never executed and delivered definitive agreements, the conditions precedent were not performed and no partnership could have formed. Accordingly, Enterprise asserts the trial court should have granted the motions for instructed verdict or JNOV and dismissed ETP's claims as a matter of law.

Conversely, ETP does not deny that the conditions precedent were not met but argues that whether a partnership was formed is controlled solely by the five-factor test set forth in the Business Organizations Code. Section 152.052 of the code, titled "Rules for Determining if Partnership is Created," states:

–8–

Factors indicating that persons have created a partnership *include* the persons':

> (1) receipt or right to receive a share of profits of the business;

> (2) expression of an intent to be partners in the business;

> (3) participation or right to participate in control of the business;

> (4) agreement to share or sharing:

>> (A) losses of the business; or

>> (B) liability for claims by third parties against the business; and

> (5) agreement to contribute or contributing money or property to the business.

BUS. ORGS. § 152.052(a) (West 2012) (emphasis added). ETP argues that the conditions precedent in the Letter Agreement are evidence of only one of the five factors in section 152.052, "expression of an intent to be partners in the business," and that the unfulfilled conditions precedent do not necessarily preclude the formation of a partnership. ETP maintains that the jury considered all the evidence, including the unfulfilled conditions precedent, under the five-factor test and properly concluded there was a partnership.

We disagree with ETP. Section 152.052 is not the sole source of rules for determining partnership formation. Section 152.052 states that determination of formation of a partnership should "include" the five factors listed in the section. However, those factors are not exclusive. *See* TEX. GOV'T CODE ANN. § 311.005(13) (West 2013) ("'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded."); *see Sneed v. Webre*, 465 S.W.3d 169, 190, 191–92 (Tex. 2015). Section 152.003 of the Business Organizations Code states that "[t]he principles of law and equity" supplement the statutory partnership provisions "unless otherwise provided by this chapter or the other partnership provisions." BUS. ORGS. § 152.003 (West 2012). One of those other "principles of law" is the law of conditions precedent.

"A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (citing RESTATEMENT (SECOND) OF CONTRACTS § 224 (1981) ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.")). The requirements in the Letter Agreement of approvals of the "Transaction" by both parties' boards of directors and the execution and delivery of definitive agreements were events that had to happen or be performed before a partnership between ETP and Enterprise arose. Those requirements are conditions precedent.

ETP argues that the conditions precedent applied only to a pipeline using the Old Ocean Pipeline and did not apply to the change of plans in June to build a new pipeline in the Seaway Pipeline right-of-way. We disagree. In this argument, ETP relies on the definition of "Potential Transaction" in the Term Sheet, which was defined as a joint venture to build a pipeline between Cushing and Houston using the Old Ocean Pipeline. However, the conditions precedent appear in the Letter Agreement, not the Term Sheet. The conditions precedent refer to the "Transaction," not the "Potential Transaction." The Letter Agreement's definition of "Transaction" did not limit the term to a joint venture to build a pipeline using the Old Ocean Pipeline. The Letter Agreement broadly defined "Transaction" to mean "a proposed joint venture transaction involving the construction (or conversion, as applicable) and operation of a pipeline to move crude oil from Cushing, Oklahoma to the Houston, Texas market." This definition includes any pipeline built or used to transport oil from Cushing to Houston. Because "Transaction" as defined in the Letter Agreement, which contained the conditions precedent, was not limited to pipelines using the Old Ocean Pipeline, ETP's argument lacks merit.

ETP also argues that the Letter Agreement does not apply to the partnership found by the jury because the agreement's definition of "Transaction" as "involving the construction . . . and operation of a pipeline" does not include the partnership found by the jury, which was "a partnership to *market and pursue* a pipeline project to transport crude oil from Cushing, Oklahoma to the Gulf Coast." (Emphasis added.) "Market and pursue" the pipeline was defined during the trial by ETP's president, Marshall McCrea, and other witnesses to mean phase one of two phases in the process of developing a pipeline. In phase one, the parties determine whether the pipeline project is viable by determining the revenue from the pipeline that will be necessary to cover the cost of building and operating the pipeline and provide the parties with a satisfactory profit. The parties then market the pipeline and hold an open season seeking sufficient shipping commitments to reach the desired level of revenue when the pipeline is built. If the open season generates sufficient commitments, then the parties move to phase two, which McCrea described as: "we go seek funding and approval to move forward on the project." Whether the parties progressed to phase two and built the pipeline was contingent on receiving sufficient shipping commitments. If the open season did not yield sufficient commitments, then the parties would not progress to phase two. Enterprise terminated the relationship in phase one, and the parties never entered phase two.

The problem with ETP's argument that the jury could conclude there was a partnership limited to phase one is that phase one, as described by the witnesses, cannot be a partnership under the Business Organizations Code. A partnership is an "association . . . to carry on a business for profit." BUS. ORGS. § 152.051(b). The evidence established that revenue, and therefore profit, could not be earned until after construction of the pipeline by either selling the pipeline or operating the pipeline and charging shippers. No evidence showed that "market[ing]" a pipeline or "pursu[ing]" a pipeline before the parties had decided to build it could generate any

–11–

revenue or earn a profit. Nor did the evidence show that the parties were committed to building the pipeline if the open season failed to yield sufficient commitments. The purpose of the parties' association in phase one was not "to carry on a business for profit" but was to determine whether to continue to phase two. Only after the parties agreed to progress to phase two when they would build and operate the pipeline could their association be described as one "to carry on a business for profit." Because a partnership under the Business Organizations Code requires the potential for profit from the association, ETP's assertion of an association limited to the determination of the feasibility of constructing and operating a pipeline is not a partnership under the Business Organizations Code. These actions cannot generate a profit, so the association is not one to carry on a business for profit and is not a partnership under the Business Organizations Code.

ETP also points out that the Letter Agreement stated it does not "create any binding or enforceable obligations between the Parties," so it cannot create conditions precedent that are "binding or enforceable" on the parties. Conditions precedent to the creation of a partnership do not "create any binding or enforceable obligations." Instead, they place an impediment on the parties' ability to "create any binding or enforceable obligations."

Both Enterprise and ETP cite this Court's opinion in *Thompson v. Thompson*, 500 S.W.2d 203 (Tex. Civ. App.—Dallas 1973, no writ). That case concerned whether a spouse's interest in a "joint venture"[6] to own an apartment complex was community property. The question before the court was whether the joint venture arose before or after the parties' divorce decree. The joint-venture agreement stated it would come into effect when the apartment complex was conveyed to the joint venture, which occurred eight months after the divorce

---

[6] As we stated in *Thompson*, a joint venture is governed by the same rules as a partnership. *Thompson*, 500 S.W.2d at 209; *see also* BUS. ORGS. § 152.051(b)(2) ("[A]n association of two or more persons to carry on a business for profit as owners creates a partnership, regardless of whether . . . (2) the association is called a 'partnership,' 'joint venture,' or other name.").

decree. *Id.* at 209. However, the joint venture's tax returns stated the joint venture commenced doing business a year before the divorce decree. *Id.* Because the appeal was from a summary judgment, the question was whether there was a fact issue concerning the date the joint venture came into existence. *Id.* Enterprise quotes this Court's statement: "It is, of course, the general rule that when an agreement provides a condition precedent to the formation of a partnership, it will not come into existence until the condition has been met." *Id.* ETP quotes this statement: "However, such condition precedent may be waived and if the parties actually proceed with the business they may be held as partners even though the condition precedent has not been satisfied." *Id.* In accordance with *Thompson*, we conclude that unperformed conditions precedent to forming a partnership will prevent the partnership from forming unless the parties waive the performance of the conditions precedent or other rules of law or equity nullify them.

Enterprise argues that, pursuant to *Thompson*, ETP had to prove and obtain a jury finding that the parties waived the conditions precedent in order to prevail. Enterprise further asserts that ETP cannot recover because it did not obtain a jury finding that there was waiver of the conditions precedent to forming a partnership.

We agree with Enterprise. "A condition precedent to the right to maintain an action must be performed and 'the fact of performance or excuse of performance must be alleged and proved in order to warrant a recovery.'" *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) (quoting *Sw. Associated Tel. Co. v. City of Dalhart*, 254 S.W.2d 819, 825 (Tex. Civ. App.—Amarillo 1952, writ ref'd n.r.e.)). If the plaintiff pleads that all conditions precedent have been performed or occurred, then the plaintiff must prove only the conditions that the defendant specifically denies. TEX. R. CIV. P. 54. In this case, ETP did not generally allege in its live pleading that all conditions precedent on its causes of action for joint

enterprise and breach of fiduciary duty occurred or were performed.[7]   Enterprise's answer, however, specifically denied:

> the occurrence or performance of all conditions precedent necessary for formation of any partnership, joint venture, or joint enterprise, because the parties did not receive their respective board approvals and the parties did not negotiate, execute and deliver definitive agreements memorializing the terms and conditions of any proposed joint venture, as required by the parties' March 10, 2011 [the Confidentiality Agreement] and April 21, 2011 [the Letter Agreement] agreements.  Enterprise denies the occurrence or performance of all conditions precedent necessary for Plaintiff's claims for breach of partnership, joint venture, or joint enterprise, because the parties did not receive their respective board approvals and the parties did not negotiate, execute and deliver definitive agreements memorializing the terms and conditions of any proposed joint venture, as required by the parties' March 10, 2011 and April 21, 2011 agreements.

Therefore, ETP either had the burden to plead and prove compliance with the conditions precedent of approvals by the parties' boards of directors and execution and delivery of definitive agreements, or it had the burden to prove an excuse for nonperformance.  *See Trevino*, 651 S.W.2d at 11 (defendant has burden of pleading nonperformance of conditions precedent, but plaintiff has burden of proving performance of conditions precedent).

ETP did not plead that the two conditions precedent were performed or that they were excused by waiver.[8]   However, even if ETP had pleaded that the conditions precedent were performed or waived, it still had the burden of proving their performance or waiver.  *See Trevino*, 651 S.W.2d at 11; *see also Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998) (citing *Trevino*).  It is undisputed that the conditions precedent were not performed.  Therefore, we must determine whether ETP can recover on a theory that the conditions precedent were waived.

---

[7] ETP did allege performance of all conditions precedent to its recovery of attorney's fees.

[8] Enterprise does not argue that ETP's failure to plead waiver of the conditions precedent constitutes waiver of ETP's theory that the conditions precedent were waived by the parties' conduct, nor does ETP address the effect of its failure to plead waiver of the conditions precedent.  Accordingly, we do not address the effect, if any, of ETP's failure to plead waiver.

Enterprise asserts that ETP had the duty to request a jury question or instruction on waiver of the conditions precedent. Rule of Civil Procedure 279 governs this situation:

> Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived. When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by the court in such a manner as to support the judgment.

TEX. R. CIV. P. 279. Under this rule, if waiver of the conditions precedent was an independent ground of recovery or defense by ETP and ETP did not conclusively prove waiver of the conditions precedent, then ETP waived that ground of recovery or defense, and Enterprise prevails on this issue.

The supreme court has "recognize[d] that waiver is an independent ground of recovery or defense and must be pleaded and proved as such." *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 554 (Tex. 1986). The supreme court applied this ruling to waiver of conditions precedent and rule 279 in *Washington v. Reliable Insurance Co.*, 581 S.W.2d 153 (Tex. 1979). In that case, Mrs. Washington applied for a life insurance policy from Reliable with her son, A.W. Washington, as beneficiary. The policy contained the provision, "This Policy shall become effective on the Policy Date if the Insured is then alive and in good health, but not otherwise." *Id.* at 157. It was undisputed that Mrs. Washington "was a very sick woman" when she applied for the policy, and she died three months later. *Id.* at 156. Reliable refused to pay the policy benefits and tried to return the premiums, but A.W. brought suit for payment of the policy benefits. *Id.* A.W. asserted that Reliable had waived the good-health requirement because its insurance agent knew that Mrs. Washington was in poor health when she

–15–

signed the application. *Id.* at 157. No jury questions were requested or submitted on this waiver theory. *Id.* The supreme court concluded that because the good-health provision was violated and A.W. failed to prove conclusively that Reliable waived the good-health provision, A.W. could not recover on the policy. *Id.* at 160.[9] Although the supreme court did not use the language of conditions precedent and rule 279 (the opinion described waiver of the good-health clause as "an affirmative defense" of the plaintiff), it did cite both rule 279 and an earlier case that described a good-health provision in a life-insurance policy as "a valid condition precedent to the policy's becoming effective." *See id.* at 157 (citing *Tex. Prudential Ins. Co. v. Dillard*, 307 S.W.2d 242, 243 (Tex. 1957)). Essentially, the supreme court's analysis was that waiver of the good-health condition precedent was an independent ground of recovery for which A.W. had to secure a jury finding. Because he did not do so, and because waiver of the good-health condition precedent was not proven as a matter of law, he waived the question of waiver of the condition precedent. And, because the good-health requirement was not waived, the condition precedent barred A.W.'s recovery. *Id.* at 157–58.

In this case, the Letter Agreement barred the formation of a partnership "unless and until [1] the Parties have received their respective board approvals and [2] definitive agreements . . . have been . . . executed and delivered by both of the Parties." These conditions precedent were not performed. Unless they were waived, no partnership was formed, and ETP cannot recover on its claims for breach of joint enterprise and breach of fiduciary duty. Although waiver of conditions precedent is an independent ground of recovery, ETP did not request a jury finding on

---

[9] There were actually two policies sold to Mrs. Washington by different agents. One of the insurance agents testified he did not know she was ill and that she appeared to be in good health. On that policy, the supreme court concluded the court of appeals correctly determined recovery on that policy was barred because the evidence did not establish waiver of the good-health clause as a matter of law. *Washington*, 581 S.W.2d at 157–58. A witness testified that when Mrs. Washington signed the other insurance application in front of the agent, Mrs. Washington was obviously in poor health. *Id.* at 158. The witness testified the agent said the insurance company would pay despite her poor health. The supreme court concluded this testimony established waiver of the good-health clause as a matter of law. *Id.* at 158–59.

waiver of the conditions precedent. Therefore, unless waiver of the conditions precedent was established as a matter of law, ETP cannot recover on its claims.

Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Id.* In this case, the question is whether the parties' conduct conclusively established their waiver of both conditions precedent. "Evidence is conclusive only if reasonable people could not differ in their conclusions . . . ." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).[10]

ETP asserts that the parties acted inconsistently with the Letter Agreement by signing and then amending the Reimbursement Agreement. The original Reimbursement Agreement, signed April 27 (six days after the Letter Agreement), required that Enterprise begin work to develop an engineering-design package for the project before the parties executed definitive agreements and that ETP reimburse Enterprise for half of Enterprise's expenditures on third parties up to $250,000. On May 23, the parties amended the Reimbursement Agreement by raising the limit of ETP's reimbursement obligation to $1 million. The Reimbursement Agreement also stated:

> It is understood by each of the Parties that the execution of this Agreement is intended to create and does create legally binding obligations between Enterprise and ETP *but only as set forth herein*. . . . Nothing herein shall be deemed to create

---

[10] Enterprise's opening brief did not attack the sufficiency of the evidence supporting the theory that the parties waived the unsatisfied conditions precedent, but we conclude Enterprise had no burden to make such an attack in its opening brief. Ordinarily, an appellant must challenge every independent ground supporting the judgment. *See Prater v. State Farm Lloyds*, 217 S.W.3d 739, 740–41 (Tex. App.—Dallas 2007, no pet.) ("When a separate and independent ground that supports a ruling is not challenged on appeal, we must affirm the lower court's ruling."). But here, there is no basis for concluding that waiver of conditions precedent was an independent ground for the judgment. Once Enterprise pleaded failure of the conditions precedent in its answer, ETP had the burden to prove either that the conditions precedent were met, waived, or otherwise excused. *See* TEX. R. CIV. P. 54; *Betty Leavell Realty Co. v. Raggio*, 669 S.W.2d 102, 104 (Tex. 1984); *Trevino*, 651 S.W.2d at 11–12.

It is undisputed that the conditions precedent were not met and ETP did not plead waiver of conditions precedent. No element of waiver was submitted to the jury, so there could be no implied trial-court finding under rule 279. Furthermore, ETP did not argue after trial that it had conclusively proved waiver. Accordingly, Enterprise was not obliged to challenge waiver in its opening brief, and it appropriately addressed waiver in its reply brief when ETP raised the issue in its appellee's brief.

or constitute a joint venture, a partnership, a corporation, or any entity taxable as a corporation, partnership or otherwise.

(Emphasis added.) We agree with ETP that the Reimbursement Agreement was in part inconsistent with the "no binding or enforceable obligations" clause of the Letter Agreement because it purported to impose obligations on the parties without definitive agreements and approval of the boards of directors, but the quoted provision shows that inconsistency extends only to the requirements that Enterprise begin the engineering-design work and that ETP reimburse Enterprise up to $1 million for half of Enterprise's expenditures on third parties. The evidence does not conclusively establish that the parties intended in the Reimbursement Agreement to abandon the conditions precedent in the Letter Agreement and undertake the obligations of partners without their respective boards' approvals and without the execution and delivery of definitive agreements. Instead, the sentence in the Reimbursement Agreement stating "[n]othing herein shall be deemed to create or constitute a joint venture, a partnership" demonstrates that the parties did not intend for the Reimbursement Agreement to waive the "no binding or enforceable obligations" clause of the Letter Agreement beyond the obligations imposed by the Reimbursement Agreement. We conclude that the Reimbursement Agreement and its amendment do not establish, conclusively or otherwise, that the parties waived the conditions precedent beyond the requirements that Enterprise begin to develop an engineering-design package and that ETP reimburse Enterprise.

ETP also presented evidence purporting to show that the parties ostensibly acted inconsistently with the conditions precedent and formed the alleged partnership sometime in May 2011. According to ETP's witnesses, particularly its president, Marshall McCrea, ETP and Enterprise formed a partnership starting in May because they agreed to share capital costs, liabilities, profits, and losses "on a 50/50 basis," and they agreed "who would control what and how we would combine our efforts to develop this project." However, as discussed above, no

evidence showed there could be any profits until after the construction of the pipeline, and the parties' agreements did not require them to build the pipeline regardless of its apparent future profitability. Even McCrea testified that the pipeline would be built only after the parties successfully completed phase one by determining the project would be profitable, receiving "approval" presumably from the parties' boards of directors, and obtaining funding. All of this evidence shows there could not be an association to operate a business for profit until the parties agreed to build the pipeline, which required the approvals of both parties' boards of directors. *Cf. COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 662–70 (Tex. App.—Dallas 2004, pet. denied) (no evidence that parties intended to be bound by unexecuted master franchise agreement when a signed letter of intent required execution of the master franchise agreement by a specific date). Moreover, this testimony is at least equally consistent with an agreement regarding the terms that would be included in a forthcoming definitive agreement if approved by the respective boards of directors. Therefore, it does not conclusively prove the required waiver. We conclude that because this evidence is consistent with the conditions precedent, it does not conclusively establish waiver of the conditions precedent.

ETP also cites the testimony of Enterprise's president, Michael Creel. Creel was asked, "Can you tell me whether or not you will agree with me, yes or no, that on April 27th there was an agreement to form a 50/50 joint venture? Was there one, yes or no?" Creel did not answer "yes" or "no"; instead, he stated, "I think we had a verbal understanding that we would work together to form a 50/50 project." This testimony could be construed that the parties' business relationship, when they formed one, would involve "50/50" interests. However, it is not conclusive evidence that they had a partnership on April 27 or that they ever formed a partnership. *Cf. id.* Furthermore, this testimony does not address whether the parties intended to waive the conditions precedent and form a partnership without executing and delivering

definitive agreements and without the approvals of their boards of directors. Therefore, the testimony does not conclusively establish that the parties waived the conditions precedent.

ETP also argues that the Letter Agreement did not contain a no-oral-modification clause, meaning that the parties permitted oral modifications to reflect changing circumstances. However, ETP does not cite, and we have not found, any evidence that the parties orally agreed to waive the conditions precedent.

Applying rule 279, we conclude that ETP waived its waiver theory by failing to obtain a jury finding on the waiver theory. Because the conditions precedent were not performed and ETP did not conclusively prove the parties waived the conditions precedent, there was no partnership between Enterprise and ETP. We therefore conclude the trial court erred by denying Enterprise's motions for directed verdict and JNOV. We sustain Enterprise's first issue.[11]

## CONCLUSION

We reverse the trial court's judgment as to ETP's claims against Enterprise and render judgment that ETP take nothing on those claims. In all other respects, we affirm the trial court's judgment.

141383F.P05

/Lana Myers/
LANA MYERS
JUSTICE

---

[11] Having sustained Enterprise's first issue, we do not address its remaining issues. *See* TEX. R. APP. P. 47.1 (opinion must address every issue necessary to disposition of the appeal).



# Court of Appeals
# Fifth District of Texas at Dallas

# JUDGMENT

ENTERPRISE PRODUCTS PARTNERS,
L.P. and ENTERPRISE PRODUCTS
OPERATING LLC, Appellants

No. 05-14-01383-CV     V.

ENERGY TRANSFER PARTNERS, L.P.
and ENERGY TRANSFER FUEL, L.P.,
Appellees

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-12667-M.
Opinion delivered by Justice Myers. Justices
Stoddart and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. That portion of the trial court's judgment awarding judgment to appellee ENERGY TRANSFER PARTNERS, L.P. against appellant ENTERPRISE PRODUCTS PARTNERS, L.P., is **REVERSED** and judgment is **RENDERED** that appellee ENERGY TRANSFER PARTNERS, L.P. take nothing on its claims against appellant ENTERPRISE PRODUCTS PARTNERS, L.P. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellants ENTERPRISE PRODUCTS PARTNERS, L.P. and ENTERPRISE PRODUCTS OPERATING LLC recover their costs of this appeal from appellees ENERGY TRANSFER PARTNERS, L.P. and ENERGY TRANSFER FUEL, L.P.

The obligations of ARCH Insurance Company as surety on appellant ENTERPRISE PRODUCTS PARTNERS, L.P.'s supersedeas bond are **DISCHARGED**.

Judgment entered this 18th day of July, 2017.