The **RELIABLE LIFE INSURANCE COMPANY, Appellant,**

v.

**A. W. WASHINGTON, Appellee.**

**No. 6701.**

Court of Civil Appeals of Texas, El Paso.

June 21, 1978.

Rehearing Denied July 19, 1978.

Shafer, Gilliland, Davis, Bunton & McCollum, Inc., Tryon D. Lewis, Odessa, for appellant.

Carl Steckelberg, Midland, for appellee.

OPINION

WARD, Justice.

The beneficiary of three non-medical life insurance policies, each in the face amount of $1,000.00, sued to recover the proceeds. The Reliable Life Insurance Company, the insurer, defended and sought cancellation of the policies on grounds that the deceased and the insured, Mrs. Ozell Washington, had given false answers to certain questions in the applications, was not in good health when the policies issued, and that two of the policies had been released. Trial was to a jury and judgment was entered on the verdict for the beneficiary for the amount claimed, statutory penalty of twelve percent, and attorney's fees. On this appeal, we reverse and render.

Mrs. Ozell Washington was in the Parkview Hospital in Midland from September 16, 1974, until October 11, 1974. Medical records of the Parkview Hospital disclosed that she was treated for chronic gomerulo nephritis and congestive heart failure; that she had shortness of breath and swelling of her feet; and concluded that she was an elderly woman who was "very, very acutely ill." It was also shown that her prognosis was guarded and grave, and that it was

difficult to get a history from her because the effort to talk caused her more shortness of breath. After her discharge from Parkview Hospital, she continued to be seen by her physician on the basis of every other day or twice a week. At this time, she was living with her son, A. W. Washington, and, while at his house, she was contacted by Luther Armstrong, an agent for the Defendant Insurance Company. Two applications for $1,000.00 life insurance policies were secured from her at that time. The Defendant then issued its Policy No. 5245868, dated October 15, and its Policy No. 974096863, dated October 21, each in the amount of $1,000.00 and each naming A. W. Washington as the beneficiary. About this time, Mrs. Washington moved to her sister's home where she was visited by Fred Jones, another agent of the Defendant Insurance Company, and he secured an application from her for a third $1,000.00 life insurance policy. Based on this last application, the Defendant then issued its Policy No. 974099336, dated October 28, in the amount of $1,000.00, and again with A. W. Washington as the beneficiary. Mrs. Washington's medical problems continued and she checked into Odessa Medical Center Hospital on December 16, and there she remained until she died on January 20, 1975. The records from that hospital showed that she was still having shortness of breath, lung and heart problems, and that she died with a final diagnosis of empyema of the right chest and cerebral infarction.

Both Policy No. 974096863, dated October 21, and Policy No. 974099336, dated October 28, contained identical good health clauses which were to the following effect:

" * * * This Policy shall become effective on the Policy Date if the Insured is then alive and in good health, but not otherwise."

No issue on the good health of the deceased on the effective dates of the policies in question was submitted to the jury because a stipulation was made that at all relevant times, on the date of all applications, and on the effective dates of each of the policies, Ozell Washington was not in good health

and the policy provisions were not complied with.

■ The Defendant's first contention is that as a matter of law the deceased was not in good health within the meaning of the terms of those two policies on their effective dates. The good health defense is not contested by the Plaintiff, but is answered on the theory that the good health provisions of those two policies were waived as a matter of law. In view of the stipulation of counsel, we must sustain the first point, unless the Plaintiff's affirmative defense thereto has been established under the evidence as a matter of law. It is settled that the insured's possession of sound health on the date of a life insurance policy may be made a condition precedent to the operative effect of the policy. *Lincoln Income Life Insurance Company v. Mayberry,* 162 Tex. 492, 347 S.W.2d 598 (1961). The stipulation thus requires that the two policies never took effect and that they should be cancelled unless a waiver of the good health provision of the policies has been established as a matter of law. *Texas Prudential Insurance Company v. Dillard,* 158 Tex. 15, 307 S.W.2d 242 (1957).

■ The affirmative defensive issue of waiver was one upon which the Plaintiff had the burden of proof. As a general rule, a party waives an issue upon which he relies by failing to request its submission. Tex.R. Civ.P. 279; *Commercial Standard Insurance Co. v. White,* 423 S.W.2d 427 at 434 (Tex. Civ.App.—Amarillo 1967, writ ref'd n.r.e.). As pointed out, this was true unless the waiver relied on was established as a matter of law. *Texas Prudential Insurance Company v. Dillard, supra.* The agent Luther Armstrong, who took the applications for two of the policies, testified that he had known Mrs. Washington for five years; that he never knew of her being sick; that at the time he took the application she appeared to be healthy; that she gave him no indication that she was ill or had been in the hospital; and that he asked her questions concerning her health and checked off her answers on the form. Basically, the

application showed that Mrs. Washington had not had heart disease, high blood pressure, or disease or injury of her lungs, nor had she had any injury, illness or operation within the past five years, nor had she been confined in the hospital for any reason, and finally there was a denial of any treatment by a doctor. All of the applications are signed by Mrs. Ozell Washington at the bottom, and her signatures are all attested by either the sister, Viola Smith, or the son, A. W. Washington, and the respective insurance agent. Each of the applications was in evidence and before the Court and the jury. The agent Fred Jones was not called to testify, and, as to this application, the sister Viola Smith testified that the agent could see that she was sick and that she told him that Mrs. Washington was sick. At best, Mrs. Smith was an interested witness. We hold that on all of the applications, waiver has not been established as a matter of law. The submission of the issue of waiver not having been requested caused that defense to be waived. The Defendant's first point is sustained.

As previously pointed out, only two of the policies had the good health provision, and only those policies were the subject of the first point. The third policy, No. 5245868, and one of the good health policies, No. 974096863, were the two that were solicited by the agent Luther Armstrong. After the insured, Mrs. Washington, had died, Mr. Armstrong went to the beneficiary, A. W. Washington, and told him that the Company would not pay on the policies. Armstrong then presented a release covering these two last policies to Mr. Washington, who signed the release and took a check in the total amount of the premiums which had been paid on all of the policies and which was in the amount of $70.85. After Mr. Washington had delivered the release to the agent and had taken the check, he apparently visited his lawyer, and the lawyer then sent the check back to the Company. The Defendant Insurance Company pled the release in this case. The release was placed in evidence after Washington admitted that he had signed the instrument. No issues were requested by the Plaintiff in avoidance of this release. The release contains at least the numbers of the policies mentioned above, and includes the statement:

" * * * This payment is in full settlement of all claims or demands of every nature against said Company under or arising out of above numbered policy * * * and release said Company from all liability under and by reason of said policy."

The release is the subject of the third point of error, which is to the effect that the trial Court erred in failing to grant judgment in favor of the Defendant based upon this release which the beneficiary had signed. The release was the subject of the Defendant's motion for an instructed verdict. It appears clear that once the issue of release was raised by the Defendant, it became incumbent upon the Plaintiff to raise defenses as to the avoidance of the release. *Womble v. Atkins,* 160 Tex. 363, 331 S.W.2d 294 (1960). The burden again was on the Plaintiff to plead and establish an avoidance, otherwise, he waived any defense as to the release. *Ellis v. Woods,* 453 S.W.2d 509 (Tex.Civ.App.—El Paso 1970, no writ). Although the Plaintiff pled no consideration as to the release, no evidence was offered and no issue was requested as to lack of consideration. The evidence at the trial disclosed that there then existed a valid controversy between the parties. The repayment to the beneficiary of the amount of the premium paid on a life policy and the acceptance of such premium by him, with full acknowledgement in the receipt that the repayment was in full payment of claims under the policy, would bar a recovery by him in the absence of a valid defense. 32 Tex.Jur.2d Insurance, Sec. 451 at p. 678 (1962). The Defendant's third point is sustained.

We have not discussed the Defendant's second and fourth points, as they are not reached. Having sustained the first and third points, judgment for the Plaintiff is reversed and judgment is here rendered that the Plaintiff take nothing, and that the named policies be cancelled.

## ON MOTION FOR REHEARING

The Defendant's defense of fraud was not discussed in the original Opinion as the jury, by its verdict, found against that defense.

■ The Plaintiff argues in his motion for rehearing that waiver of the good health provision of the first two policies discussed was established because no false representation was made by Ozell Washington to either of the two soliciting agents. The Plaintiff relies upon the jury answers to Special Issues Nos. 1 and 6. Issue No. 1 submitted the Defendant's first defensive issue of the defense of false representation having been made by Ozell Washington as to her good health to the agent Armstrong. Special Issue No. 6 was identical to Issue No. 1, except that it inquired as to such representation having been made to the agent Fred Jones. The jury answered both issues in the negative. These were issues on which the Defendant had the burden of proof to establish its defense of fraud. The negative answers of the jury to those issues do not aid the Plaintiff in his position that they established that Ozell Washington gave the true facts regarding her poor health to those two agents. The Plaintiff would have the burden of proof to establish that she told the agents the truth and a failure to find on the Defendant's issues does not establish the Plaintiff's defensive issues of waiver.

We have considered all of the matters presented by the Plaintiff in his motion for rehearing and they are overruled.