A. W. WASHINGTON, Petitioner,

v.

The RELIABLE LIFE INSURANCE COMPANY, Respondent.

No. B–7941.

Supreme Court of Texas.

May 2, 1979.

Rehearing Denied May 29, 1979.

Carl Steckelberg, Midland, for petitioner.

Shafer, Gilliland, Davis, Bunton & McCollum, Tryon D. Lewis, Odessa, for respondent.

SAM D. JOHNSON, Justice.

This is a suit brought by the beneficiary of three life insurance policies to recover the proceeds thereof. A. W. Washington, plaintiff below and petitioner here, brought suit against The Reliable Life Insurance Company, defendant below and respondent here, to collect the benefits of three $1,000 nonmedical life insurance policies, which were purchased on the life of his mother, Ozell Washington, within four months of her death. After trial to a jury, the trial court rendered judgment in favor of A. W. Washington, the named beneficiary of all three policies, for $3,000, twelve percent statutory penalties, and attorneys' fees. The court of civil appeals reversed, and rendered a take-nothing judgment against Washington, holding that he failed to establish as a matter of law either an avoidance of release or Reliable's waiver of "good health" clauses in the policies. 570 S.W.2d 24. We affirm the judgment of the court of civil appeals in part and reverse and remand for a new trial in part.

In October 1974 Reliable issued three life insurance policies pursuant to separate applications made by the insured, Ozell Washington, who named her son, A. W. Washington, as beneficiary. These three policies involve somewhat different facts and legal questions as indicated by the following chart:

| Policy | Number | Agent | Good Health Provision | Covered By Release | Application Attached to Policy |
|--------|--------|-------|----------------------|--------------------|-------------------------------|
| A | 974096863 | Armstrong | Yes | Yes | No |
| B | 5245868 | Armstrong | No | Yes | Yes |
| C | 974099336 | Jones | Yes | No | No |

The facts and circumstances surrounding the issuance of these policies are as follows.

Ozell Washington was a very sick woman during the last few months of her life. She was a patient in Parkview Hospital in Midland from September 16 to October 11, 1974. Medical records from the hospital show that she was treated for chronic gomerulo nephritis and congestive heart failure. Her feet and ankles were very swollen. She had shortness of breath, which made it difficult for her to speak. It was difficult to obtain a history from her because the effort to talk only enhanced her shortness of breath. Notations in the records categorized her as a "Class IV cardiac" patient and "very, very acutely ill." Her prognosis was "guarded and grave." A doctor continued to see her at least twice a week after she left the hospital.

Upon her discharge from the hospital, Ozell went to the home of her son, A. W. Washington, beneficiary of the policies, who lived in Midland. Sometime before October 15, Luther "Luke" Armstrong, an agent for Reliable, came by A. W. Washington's home and talked to Ozell about taking out some life insurance.[1] She signed two applications for two $1,000 policies (A and B on the chart above). Reliable issued Policy A on October 21 and Policy B on October 15, each in the amount of $1,000 and each naming A. W. Washington as the beneficiary. About this time, Ozell moved into the home of her sister, Viola Smith, who also lived in Midland. There she was visited by Fred Jones, another agent for Reliable, who took her application for a third policy. Reliable issued Policy C on October 28, again for $1,000 and again naming A. W. Washington as beneficiary.

Ozell's condition thereafter worsened and she entered Odessa Medical Center Hospital on December 16, where she remained until her death on January 20, 1975. The medical records from that hospital showed that she was still having shortness of breath, swollen feet, and heart and lung problems. The death certificate listed the causes of death as cerebral infarction; arterial occlusion acute, intracerebral; and arteriosclerosis. Reliable was duly notified of her death.

Thereafter, in April 1975, Agent Armstrong called on the beneficiary of all three policies, A. W. Washington, and persuaded him to sign a release form in exchange for a return of the premiums paid on the policies. The release only covered Policies A and B. Reliable's check for $70.85, the amount of the premiums, was either left with Washington or mailed to him. Washington refused to cash the check. Instead, he took it to his attorney who mailed it back to Reliable along with a letter demanding full payment of the policy benefits. By return letter, Reliable stated that it was voiding the check "refused by [Washington]" because it should have named the Jackson Funeral Home as a co-payee. The letter further asserted that Washington was only entitled to a return of the premiums. Washington thereafter filed this suit.

## VALIDITY OF THE RELEASE

Reliable contends that it is not liable on Policies A and B because A. W. Washington, the beneficiary, signed a release. No special issues were requested by Washington in avoidance of this release and none were submitted. As a general rule, a party waives an issue upon which he relies by failure to request its submission. Tex.R. Civ.P. 279. Washington contends that no issues were necessary, however, since the evidence established as a matter of law that there was no consideration to support the release. Citing the legal treatise *Texas Jurisprudence,* the court of civil appeals re-

---

1. The exact date is uncertain. Although Agent Armstrong talked to Ozell while at her son's house, the date on the application form is October 7, at which time she was still in the hospital. The meeting had to be sometime before October 15, however, because Policy B was issued on that date.

jected this argument with the following statement:

"The repayment to the beneficiary of the amount of the premium paid on a life policy and the acceptance of such premium by him, with full acknowledgment in the receipt that the repayment was in full payment of claims under the policy, would bar a recovery by him in the absence of a valid defense. 32 TEX. JUR.2d, Insurance, Sec. 451 at p. 678 (1962)." 570 S.W.2d 24 at 27.

The only case cited by the treatise in support of this position is *Great Southern Life Ins. Co. v. Heavin,* 39 S.W.2d 851 (Tex.Com. App.1931, holding approved), which in turn is the only case cited to this court by Reliable.

*Heavin* is distinguishable on at least two grounds. First, the policy in *Heavin* specifically allowed a return of premiums instead of benefits, whereas the policy in our case has no such provision. Secondly, Mrs. Heavin not only accepted and kept the money tendered her, but also never offered to return it, whereas, in our case, Washington returned the check to Reliable and demanded full payment of the policy benefits.[2] *See Camden Fire Ins. Ass'n v. Baird,* 187 S.W. 699 (Tex.Civ.App.—Dallas 1916, no writ). Moreover, Reliable voided the check due to omission of a payee and never tendered a corrected check to Washington. These facts establish as a matter of law a failure of consideration to support the release. It was not necessary to submit matters to the jury in this regard. The judgment of the court of civil appeals must be reversed on this ground.

## WAIVER OF "GOOD HEALTH" CLAUSE

■ Policy A and Policy C contain identical "good health" clauses, which read as follows:

"This Policy shall become effective on the Policy Date if the Insured is then alive and in good health, but not otherwise."

The parties stipulated that Ozell Washington, the insured, was not in good health within the meaning of the terms of these two policies on their effective dates. A. W. Washington, the beneficiary, urges, however, that the "good health" clauses were waived as a matter of law in that Reliable's agents knew that Ozell was not in good health at the time the applications were procured.[3] Waiver was an affirmative defense upon which Washington had the burden of proof. *Texas Prudential Insurance Company v. Dillard,* 158 Tex. 15, 307 S.W.2d 242 (1957). No special issues were requested or submitted to the jury on this point. As stated above, a party generally waives an issue upon which he relies by failure to request its submission. Tex.R.Civ.P. 279. Washington correctly states that no issue would be necessary if waiver were established as a matter of law. *Texas Prudential Insurance Company v. Dillard, supra.* The court of civil appeals held that the evidence did not establish waiver as a matter of law. Consequently, Washington was denied recovery on Policies A and C because of the violations of the "good health" clauses in

2. Reliable states in its brief that Washington and Agent Armstrong agreed after some discussion that Washington was only entitled to a return of the premiums and nothing more, whereupon he signed the release. We find nothing in the record to support this assertion. Agent Armstrong merely testified that Washington signed the release; he did not mention any "agreement." Washington recounted the event in the following way: "Well, when Luke came—this is all I have ever called him, and we know one another pretty good. And he says, 'A. W., I'm sorry to tell you that it is not going

to pay. And I brought your money back, refund.' And I said, 'Okay, Luke.' He said, 'But I do need you to sign to show that I did give you this check.' And I said, 'Luke, I don't want to sign anything now,' because actually I was disgusted. He said, 'Well, at least show that I did leave it here with you.' I said, 'Well, if that will help you, I will sign it to show that this is it.' So I signed it, yes, sir."

3. Reliable has not denied the authority of its agents to waive these provisions of the policies. The point was not preserved, in any event.

those policies. We must examine the evidence concerning Policies A and C in light of this holding.

■■■ *Policy A.* Agent Armstrong obtained the application for this policy at the home of A. W. Washington, with whom Ozell was living at the time. Armstrong testified that he had known Ozell for five or six years and that he did not know she was ill. On the day in question, she appeared to him to be in good health. Even A. W. Washington testified that on that day she looked "pretty good" and was "feeling Okay." This testimony fails to establish as a matter of law that Agent Armstrong knew Ozell was not in good health and that he waived the "good health" provision of the policy. The court of civil appeals therefore correctly held that recovery on this policy was barred. *See Texas Prudential Insurance Company v. Dillard, supra.*

■■■ *Policy C.* This policy presents a somewhat different situation. Agent Jones obtained the application for this policy at the home of Viola Smith, Ozell's sister. Three people were present when Ozell signed the application: Agent Jones, Ozell, and Viola Smith. Agent Jones did not testify and there is nothing in the record to indicate or explain his unavailability. Mrs. Smith testified that Ozell looked "horrible," "like a skeleton," and "durn near dead."

She stated that Ozell could not sit erect, could not get out of her chair, had difficulty talking and breathing, and that "everybody" who visited commented about her swollen legs. Most importantly, Mrs. Smith testified that she warned Ozell that the insurance company would not accept her because of her poor health.

"Q Well, I understand from your testimony that you do remember your saying that this insurance won't pay because you are in bad health?

"A Sure did. That was what I said. I said that.

"Q All right. And what did the agent say to you and to Ozell when you said that?

"A He said, 'Oh, yes, they will pay, they will pay. It is good. They will pay.' And I never did believe it, and I spoke it."

On this point, Mrs. Smith was adamant and unswerving, returning to it several times during her testimony.[4] Nevertheless, the court of civil appeals held that Mrs. Smith was "[a]t best . . . an interested witness" and that as such her testimony did not establish waiver as a matter of law.[5] 570 S.W.2d 24 at 27.

This court has only recently had occasion to consider in a slightly different context the rules concerning the finality to be given to testimony of an interested witness. In

---

**4.** At one point Mrs. Smith gave the following account of what happened:

"A *She mentioned she needed a policy.* Then he talked to her. And then I told her that they wouldn't write her up because you sick.

"Q Okay. And what did she say to the insurance man?

"A She talked with him. Now I can't tell what was said word for word, but he did insure her they would pay, because he knew she was sick.

"Q How did he know she was sick?

"A *Because I said it*—I told him she was sick. And he seen her, she was sick."

At another point, she explained it this way:

"Q Well, as a matter of fact, you told the insurance agent, and you told your sister, did you not—

"A I sure did.

"Q —that the insurance company would not write this insurance?

"A I told her they wouldn't pay.

"Q And what did the insurance agent say?

"A He said they would.

"Q He said that they would?

"A He said that they would.

"Q All right. And were you in the room during this conversation that your sister had with the insurance man?

"A Sitting right there.

"Q And he told her that the insurance would pay if she would take it out?

"A Sure did."

**5.** It should be noted that the release signed by A. W. Washington did not cover this policy. Therefore, that defense is not open to Reliable on this policy.

*Collora v. Navarro,* 574 S.W.2d 65 (Tex. 1978), this court stated the general rule to be that evidence given by an interested witness raises an issue of credibility upon which the jury must pass. It was also recognized that an exception to this general rule may arise when the testimony is clear, direct, and positive, is free from internal inconsistencies or contradictions, and is uncontradicted by other testimony or circumstances—" 'in short, when there is nothing to cause any reasonable suspicion as to its truth.' " 574 S.W.2d 65 at 69. The opinion further explained:

> "This exception is most appropriate when the opposing party has the means and opportunity of disproving the testimony or testing the credibility of the witness, but fails to avail himself of it. On the other hand, . . . 'the basis for recognizing an exception is weakened somewhat when the testimony is such that it could not readily be contradicted if untrue.' " [Citations omitted.] 574 S.W.2d 65 at 69.

An application of these rules to the facts of the instant case leads to the conclusion that the testimony of Mrs. Smith established as a matter of law that Reliable waived the "good health" provision of Policy C. Again we note that Reliable does not question the authority of its agents to waive this provision of the policy. Her testimony was clear, direct, positive, and uncontradicted. Reliable had the means to disprove her testimony by calling Agent Jones as a witness or by introducing his testimony through deposition. For whatever reason, Reliable did not utilize these options. Under these circumstances, we hold that the exception to the general rule applies and the testimony of Mrs. Smith established waiver as a matter of law. On this policy, therefore, the judgment of the court of civil appeals must be reversed.

## MISREPRESENTATIONS DEFENSE

At trial, Reliable sought to avoid liability on all three policies with the defense of fraudulent misrepresentations by Ozell concerning her health. All three application forms contained questions inquiring about the health of the prospective insured. The answers on the application forms indicated that Ozell had not had heart disease, high blood pressure, or disease or injury of her lungs, nor had she had any injury, illness or operation within the past five years, nor had she been confined in the hospital for any reason, nor had she received any treatment by a doctor. All of the applications were signed by Ozell. These answers, of course, were false.

In the court's charge to the jury, special issue one inquired whether Ozell had made certain representations concerning her health to Agent Armstrong when he was taking applications for Policies A and B. The jury answered this issue in the negative. Special issues two through five were not answered because they were conditioned upon an affirmative answer to special issue one. These unanswered issues asked whether the representations were false, were related to material facts or matters, were relied on by Reliable in issuing the policies, and were made by Ozell with the intent to deceive Reliable and induce it to issue the policies. Special issues six through ten made the same inquiries concerning the application for Policy C taken by Agent Jones. The jury returned a negative finding on special issue six, concerning Ozell's representations to Agent Jones. Consequently, special issues seven through ten, relating to falsity, materiality, reliance, and intent, were not answered, inasmuch as they were conditioned upon an affirmative finding on special issue six. The trial court entered judgment in favor of A. W. Washington.

■ Reliable moved for judgment *non obstante veredicto,* contending that the defense of misrepresentations was proven as a matter of law. The trial court overruled the motion. The court of civil appeals disposed of the case on other grounds and did not consider the issue.[6] Reliable bases its

---

6. Reliable also argued the evidence was factually insufficient to support these answers. The court of civil appeals did not reach this point either.

argument on the rule that an insured, having signed the application, is bound by the representations therein. In *Odom v. Insurance Company of Penn.*, 455 S.W.2d 195, 199 (Tex.1970), this court stated: "[W]here . . . an application for insurance is attached to and made a part of the policy and is accepted and retained by the insured, the insured is conclusively presumed to have knowledge of its contents and to have ratified any false statements therein." This rule does not pertain to Policies A and C because the application forms were not attached to those policies.

The rule does control Policy B, however, because the application was attached to and made a part of that policy. While there was no testimony concerning delivery of Policy B to Ozell, it was admitted in request for admissions that Reliable "caused to be *delivered to Ozell Washington*" all three policies. [Emphasis added.][7] Under the rule of *Odom,* then, Ozell was conclusively presumed to have ratified the false statements in the application. *Robinson v. Reliable Life Ins. Co.*, 569 S.W.2d 28, 30 (Tex.1978); *Johnson v. Prudential Insurance Co. of America*, 519 S.W.2d 111, 114 (Tex.1975).

Contrary to what Reliable contends, however, this does not automatically establish the defense of misrepresentations, for there is still outstanding the issue of intentional deception, upon which Reliable had the burden of proof. As explained above, the jury did not reach the issue of intent because it failed to find in special issue one that Ozell made representations concerning her health to Agent Armstrong. Since under *Odom v. Insurance Company of Penn., supra,* Ozell was conclusively presumed to have *ratified* the false statements in the application on Policy B, special issue one, asking whether she *made* representations to Agent Armstrong, was irrelevant and it was improper to condition special issues two through five upon an affirmative answer to special issue one. Reliable is

entitled to a new trial on its defense of misrepresentations as to Policy B. *First Continental Life & Accident Co. v. Bolton,* 524 S.W.2d 727 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n. r. e.).

It is true that *Odom* denied recovery to the insured without requiring a finding of intent. However, there are at least two reasons why this part of *Odom* does not apply to the case at bar. First, *Odom* and the cases cited therein concerned violations of warranties made by the insured, whereas the instant case concerns representations, a distinction of some importance to the court in *First Continental Life & Accident Co. v. Bolton, supra.* Secondly, there was strong evidence of collusion in *Odom.* Indeed, the court of civil appeals in that case held that collusion was proved as a matter of law, 441 S.W.2d 584, although that was not a basis of this court's opinion. There is no suggestion of collusion between Ozell and Agent Armstrong here. Similarly, in *Johnson v. Prudential Insurance Co. of America, supra,* there was a specific finding of willful intent to deceive.

## CONCLUSION

In sum, we hold that under the facts in the record before us A. W. Washington is not entitled to recover under Policy A because the "good health" provision was violated and Reliable's waiver of this provision was not established as a matter of law. Under the facts in the record before us Washington is not barred from recovering under Policy B by the release, because the release was not supported by consideration. The cause is remanded for a new trial with regard to Policy B, however, so that Reliable may properly submit the defense of misrepresentations to the jury on this policy. Under the facts in the record before us Washington is entitled to recover under Policy C, notwithstanding the violation of the "good health" clause, because Reliable's waiver of this provision was established as a matter of law. There still remains for reso-

---

7. It was A. W. Washington who directed this request for admission to Reliable. Reliable admitted it as fact.

lution, however, the defense of misrepresentations on Policy C, which is independent of the "good health" defense, *Southern Surety Co. v. Benton,* 280 S.W. 551 (Tex.Com.App. —1926, jdgmt adopted), and on which Reliable has preserved its "insufficient evidence" point of error.

The question is presented as to the proper disposition of this appeal. One possible course of action would be to sever the causes of action on each policy and, as severed, to affirm the judgment of the court of civil appeals on Policy A, reverse and remand for new trial the judgment relative to Policy B, and reverse and remand to the court of civil appeals Policy C on the factual sufficiency of the evidence point. This is not an appropriate solution. Rule 503 of the Texas Rules of Civil Procedure allows severances and partial remands "if it appear to the court that the error affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties . . . ." Rule 505 allows a remand in the interest of justice. It is the conclusion of this court that fairness to the parties and the interest of justice require that Policies B and C be remanded for a new trial.

Our judgment, therefore, is that the cause of action on Policy A is severed and, as severed, the judgment of the court of civil appeals relative thereto for The Reliable Life Insurance Company is affirmed. The cause of action on Policies B and C is likewise severed and, as severed, the judgment of the court of civil appeals relative to such policies is reversed and the cause relative to those policies is remanded for a new trial. It is to be anticipated that on retrial the different legal issues affecting each policy will be borne in mind and that such special issues as may be raised by the evidence and required by this opinion will be submitted to the jury. It is further to be anticipated that the holdings in this opinion concerning the state of the evidence will not necessarily be binding upon the retrial of this case, inasmuch as the evidence adduced at the new trial may differ from that shown in the record currently before this court.