**Reversed and Remanded and Majority and Dissenting Opinions filed December 6, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00045-CV

---

### MARYAM MOHAMMADI, Appellant

### V.

### ALBERTSONS, LLC D/B/A RANDALL'S; ALBERTSONS COMPANIES, LLC D/B/A RANDALL'S; RANDALL'S FOOD MARKETS, INC. D/B/A RANDALL'S; AND RANDALL'S FOOD & DRUGS L.P., D/B/A RANDALL'S, Appellees

---

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2017-51885**

---

## O P I N I O N

Maryam Mohammadi appeals from a take nothing judgment based on an adverse jury verdict in her slip-and-fall, premises liability action against appellees Albertsons, LLC d/b/a Randall's; Albertson's Companies, LLC d/b/a Randall's; Randall's Food Markets, Inc. d/b/a Randall's; and Randall's Food & Drugs L.P.,

d/b/a Randall's (collectively, "Randalls"). In three issues, Mohammadi contends the trial court erred in constructing the jury charge, principally in bifurcating the premises liability knowledge element into two questions and in conditioning jury responses to certain questions on the answers to other questions. Concluding the trial court erred in its construction of the charge, we reverse and remand.

## I. Background

At the time of the incident made the basis of this lawsuit, Mohammadi worked at a Wells Fargo Bank branch located within a Randalls grocery store. On the day in question, Mohammadi was returning from a Randalls restroom, heading back towards Wells Fargo, when her left foot slid forward on the floor and she fell at the front of the store. Mohammadi fell directly in front of two open wire shopping carts that Randalls employees used to collect returned and damaged items. As will be discussed in more detail below, Mohammadi asserts that she slipped on a liquid substance on the floor beside one of the return carts.

### A. The Evidence

The key evidence introduced at trial regarding Randalls' knowledge was a surveillance video taken of the front of the Randalls store before, during, and after Mohammadi's fall. Other evidence included the testimony of a former Randalls employee who was a supervisor in the area where Mohammadi fell, Mohammadi's own testimony regarding events, testimony from Randalls' director of safety, and Randalls' incident reports regarding the fall.

The video is not of particularly high quality. It runs for approximately 15 minutes and shows a static view of the front of the store, including the end of some of the checkout lanes, the shopping carts for returned and damaged items, and the walkway between the lanes and the carts. Very early in the video, a Randalls

2

employee can be seen carrying what appeared to be something in a plastic grocery bag from the checkout lanes and across the walkway. The employee dipped the bag and its contents down into a container for a couple of seconds before pulling it back out. One witness described the container as looking like a trash can and the employee's motion with the bag as shaking. The employee then deposited the bag and its contents into the child seat of one of the return carts. In her other hand, she appeared to be holding a towel. One witness watching the video stated that it looked like the employee wiped the bottom of the bag with the towel, but this is difficult to discern with certainty on the video. The employee then appeared to wipe her hands on the towel as she walked away.

The video continues with a number of people traversing the walkway. As defense counsel pointed out and former Randalls employee Brandon Wilmore agreed in his testimony, none of the people shown in the video walk as closely to the return carts as Mohammadi does when she falls. Wilmore, who was the supervisor of that area at that time, and other employees are among the people moving along the walkway in the video. At approximately the 8:45 mark in the video, Mohammadi entered the picture walking across the front of the store. Apparently due to traffic on the walkway, she stepped particularly close to the return carts. When she did so, her left foot slid out from under her, and she fell to the floor on her left side.

Wilmore and a person who appeared to be a customer came over to check on Mohammadi. The customer looked in the area where Mohammadi's foot slipped and appeared to point out something on the floor to Wilmore. The two men helped Mohammadi to her feet and then inspected the area by the return carts again. The customer then left, and Wilmore retrieved a large roll of paper towels, tore off a section several feet long, and used his foot to wipe the paper towel across the floor

3

where Mohammadi appeared to slip. A security guard then entered the picture, and he and Wilmore visually inspected the floor before Wilmore again wiped the towel over the area. After a couple of minutes, Mohammadi was able to slowly walk away from the area with the aid of another person, her left armed draped over the other person's shoulders. Afterwards, Wilmore and the security guard again inspected the floor. Wilmore was still holding the paper towel at that point, but it is unclear if he again used it to wipe the floor. Later in the video, Wilmore can be seen showing the area of the floor to another employee.

In his testimony, Wilmore confirmed that the Randalls store did not provide solid plastic containers for damaged products and if liquid fell from a damaged product in the return carts, it would fall to the floor. He explained that damaged products had to be accounted for and could not simply be thrown away and cashiers were trained accordingly. Wilmore agreed that on the video, it looked like the Randalls employee placed the shopping bag and contents into the container that looked like a trash can "to shake off some liquid before [putting] it into the return cart" and then wiped her hands on the towel she was carrying. Wilmore said that he wiped the floor with paper towel just in case there was anything on the floor, but he initially denied finding anything on the floor. Wilmore acknowledged, however, that the Randalls incident report regarding Mohammadi's fall stated that she slipped in water on the floor and hurt her knee and shoulder. The report also stated that Wilmore observed a small number of liquid drops on the floor.

On cross-examination, Wilmore stated that he could not "100 percent confirm that there [was] something on [the] bag" that the Randalls employee put in the return cart. He said that as shown on the video, he performed a sweep walk of the location before the fall occurred and saw nothing. Wilmore stated inconsistently that (1) he does not recall if anything was on the floor at that

4

location or whether he picked up anything with the paper towel when he wiped that area of floor and (2) he did not find anything and the paper towel was not damp when he picked it up. Wilmore indicated that it had been raining on the day in question, but Mohammadi stated in her testimony that she did not think it had been raining that day. Moreover, there was testimony that the area of the fall was not near a store entrance.

On re-direct, Wilmore opined that Mohammadi was not being negligent or walking differently than others in the store when she fell and that if anyone was at fault for the fall, it was Randalls and not Mohammadi. He insisted that he told the truth in the incident report that Mohammadi slipped on water on the floor. And he acknowledged that he reported three times on the day in question that he had cleaned up a foreign substance from the area, possibly water.

Mohammadi testified that after she fell, she saw liquid to her right where the return cart was located. Her opinion is that the substance was something that had leaked from the return cart and could not have been rainwater from outside. Mohammadi did not recall if she had liquid on her body or pants after she fell as she was in severe pain at the time.

Michael Habbestad, Randalls' Director of Safety, disagreed that the video revealed there was liquid in the bag that the employee placed in the return cart, but he agreed that it looked as though the employee was holding a paper towel under the bag. He acknowledged it was Randalls' job to make sure the area was clear, clean, and safe. The record also contains the Randalls incident reports concerning the fall, which, as discussed above, indicated Mohammadi slipped on liquid on the floor and Wilmore cleaned something up in that area.

**B. The jury charge**

5

Before submitting the charge to the jury, the trial court determined that Mohammadi was an invitee at the time of the incident. In premises liability cases, the duty owed by an owner or occupier of property is determined by whether the allegedly injured party is classified as an invitee, licensee, or trespasser. *Hernandez v. Gonzalez-Flores*, 530 S.W.3d 253, 256 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Mohammadi maintained that she was an invitee at the time and place of her fall, while Randalls insisted that she was a mere licensee. An invitee enters land with the owner or occupier's knowledge and for the mutual benefit of both, while a licensee enters and remains on land with the owner or occupier's consent but for the licensee's own convenience. *See, e.g.*, *Plasencia v. Burton*, 440 S.W.3d 139, 144 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Phrased differently, an invitee is a person who enters the premises of another in answer to an express or implied invitation from the owner or occupier for their mutual benefit. *Johnson v. Tex. Genco, L.P.*, No. 14-05-00473-CV, 2006 WL 1389598, at *3 (Tex. App.—Houston [14th Dist.] May 23, 2006, no pet.) (mem. op.). In the absence of some relation that inures to the mutual benefit of the plaintiff and the owner, or to the benefit of the owner, the injured party must be regarded as a mere licensee and not an invitee. *Newman v. CenterPoint Energy Houston Elec., LLC*, No. 14-16-00007-CV, 2017 WL 2292577, at *8 (Tex. App.—Houston [14th Dist.] May 25, 2017, no pet.) (mem. op.).

Generally speaking, in order to impose liability on an owner or occupier of property, an invitee must show that the owner or occupier failed to protect the invitee from a known condition that created an unreasonable risk of harm or a dangerous condition that should have been discovered by the exercise of reasonable care; whereas, a licensee must show that the owner or occupier failed to protect the licensee only from a known dangerous condition. *See, e.g.*, *Plasencia*,

6

440 S.W.3d at 144.

As stated, the trial court determined that Mohammadi was an invitee, but perhaps because of the dispute over her status, the trial court decided to bifurcate the invitee knowledge element into two separate questions. The Texas Supreme Court has held that "the proper instruction in a premises liability case when the plaintiff is" an invitee reads:

> With respect to the condition of the premises, defendant was negligent if—
>
> a. the condition posed an unreasonable risk of harm;
>
> b. **defendant knew or reasonably should have known of the danger**; and
>
> c. defendant failed to exercise ordinary care to protect plaintiff from danger, by both failing to adequately warn plaintiff of the condition and failing to make that condition reasonably safe.

*State v. Williams*, 940 S.W.2d 583, 584–85 (Tex. 1996) (emphasis added.) This language is also the basis for the Texas Pattern Jury Charge for premises liability when the plaintiff is an invitee. Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Malpractice, Premises & Products* PJC 66.4 (2016).

In bifurcating the knowledge element, the trial court submitted two questions that were identical except as to the knowledge element. Jury Question 1 asked

> Did the negligence, if any, of Randall's Food & Drug, L.P. proximately cause the occurrence in question?
>
> With respect to the condition of the premises, Randall's Food & Drug, L.P. was negligent if—
>
> 1. the condition posed an unreasonable risk of harm, and
>
> 2. ***Randall's reasonably should have known of the danger***, and
>
> 3. Randall's failed to exercise ordinary care to protect Maryam

7

Mohammadi from the danger, by both failing to adequately warn Maryam Mohammadi of the condition and failing to make that condition reasonably safe. (Emphasis added.)

Jury Question 2 was conditioned on a positive answer to Question 1 and asked:

Did the negligence, if any, of Randall's Food & Drug, L.P. proximately cause the occurrence in question?

With respect to the condition of the premises, Randall's Food & Drug, L.P. was negligent if—

1. the condition posed an unreasonable risk of harm, and

2. **Randall's knew of the danger**, and

3. Randall's failed to exercise ordinary care to protect Maryam Mohammadi from the danger, by both failing to adequately warn Maryam Mohammadi of the condition and failing to make that condition reasonably safe. (Emphasis added.)

Question 1 therefore queried regarding constructive knowledge as would be appropriate only if Mohammadi was an invitee, and Question 2 inquired regarding actual knowledge, which would be proper if Mohammadi were an invitee or a licensee.[1] Both questions also instructed the jury on the applicable definitions of "ordinary care" and "proximate cause." There is no explanation in the record for why the trial court conditioned Question 2 on a positive response to Question 1.

The third and final charge question asked about damages and was conditioned on a positive answer to either Question 1 or Question 2, even though Question 2 was itself conditioned on a positive answer to Question 1. At the conclusion of trial, the jury answered Question 1, "No," and therefore did not answer the other two questions. As stated, on appeal, Mohammadi challenges the

_____

[1] These concepts are discussed in more detail below.

8

trial court's construction of the jury charge, particularly the bifurcation of the knowledge element and the conditioning of Question 2 on the jury's answer to Question 1.[2]

## II. Standards of Review

Under Texas Rule of Civil Procedure 278, a trial court is required to submit requested questions to the jury on controlling issues if those questions are supported by the pleadings and the evidence. Tex. R. Civ. P. 278; *see also Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex. 1995) ("If an issue is properly pleaded and is supported by some evidence, a litigant is entitled to have controlling questions submitted to the jury."). A trial court has broad discretion in formulating jury questions so long as the charge is legally correct and fairly places the disputed issues before the jury. *See Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999); *DeClaris Assocs. v. McCoy Workplace Sols., L.P.*, 331 S.W.3d 556, 563 (Tex. App.—Houston [14th Dist.] 2011, no pet.). A trial court abuses this discretion when it acts without reference to guiding rules and principles. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *Saenz-Guerrero v. Gardner*, 587 S.W.3d 191, 195 (Tex. App.—Houston [14th Dist.] 2019, no pet.). A judgment will not be reversed based on charge error unless such error probably

---

[2] Mohammadi states her three issues as follows:

[1] Did the trial court err by bifurcating the proper standard and legal definition of the knowledge of the owner/operator of the premises which must be proven by the Appellant, as correctly stated in TEXAS PATTERN JURY CHARGE 66-4, into two separate questions[?]

[2] Did the trial court err by conditioning the Jury's answer to Jury Question No. 2 to a "yes" answer for Jury Question No. 1 because it resulted in the jury applying an incorrect statement of the law to the evidence?

[3] Did the trial court err by conditioning the Jury's answer to Jury Question No. 3 to a "yes" answer for Jury Question No. 1 or Jury Question No. 2 because it resulted in ambiguous conflict in the jury question conditioning instructions resulting in the jury being unable to correctly apply the law to the evidence?

caused the rendition of an improper verdict or probably prevented a party from properly presenting the case to the appellate courts. *See* Tex. R. App. P. 44.1(a)(1); *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009).

Generally, broad form jury submissions are required "whenever feasible." *See* Tex. R. Civ. P. 277. However, there may be situations in which bifurcated or granulated submission is acceptable, such as to avoid mixing valid and potentially invalid liability theories in a single broad-form liability question. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 389 (Tex. 2000). Even when jury questions are improperly submitted in bifurcated or granulated form, it is not reversible error if the questions fairly submitted the disputed issues and incorporated a correct legal standard for the jury to apply. *See H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 260 (Tex. 1992) (rejecting contention that granulated premises liability submission was reversible error); *see also Hyundai Motor Co.*, 995 S.W.2d at 664; *DeClaris Assocs.*, 331 S.W.3d at 563.

### III.   Discussion

As stated, the trial court determined that Mohammadi was an invitee. Accordingly, to impose liability on Randalls, Mohammadi had to prove, among other things, that Randalls had actual or constructive knowledge of the allegedly unreasonably dangerous condition. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). "A condition is unreasonably dangerous if it presents an unreasonable risk of harm." *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007). Generally, a slip-and-fall plaintiff satisfies the knowledge element by establishing that (1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a

10

reasonable opportunity to discover it. *See Reece*, 81 S.W.3d at 814.

Mohammadi contends that the trial court erred in failing to submit to the jury a premises liability question in keeping with the supreme court's "proper instruction" in *Williams* and PJC 66.4 and instead bifurcating the knowledge element into two separate questions. She also asserts the court erred in conditioning a jury response on actual knowledge (Question 2) on a positive finding by the jury on constructive knowledge (Question 1). Mohammadi contends that these errors effectively deprived her of an actual knowledge submission and tainted the entirety of the charge. *See Thedford Crossing, L.P. v. Tyler Rose Nursery, Inc.*, 306 S.W.3d 860, 866 (Tex. App.—Tyler 2010, pet. denied) ("If an erroneous conditional submission deprives a party of the submission of an issue raised by the pleadings and evidence, it constitutes reversible error."); *accord Varme v. Gordon*, 881 S.W.2d 877, 881 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding same, citing *Washington v. Reliable Life Ins. Co.*, 581 S.W.2d 153, 160 (Tex. 1979)).

In response, Randalls argues that (1) Mohammadi failed to preserve her arguments in the trial court; (2) Mohammadi was a licensee and not an invitee, thus bifurcation in the jury charge is a nonissue; (3) actual knowledge was submitted to the jury, but the jury's "no" answer to the constructive knowledge question logically precluded the possibility of a "yes" response to the actual knowledge question; and (4) the evidence did not support submission of a question on actual knowledge. We will begin by addressing the preservation issue before turning to the substantive issues raised in this appeal.

### A. Preservation.

Randalls first asserts that Mohammadi failed to preserve her complaints. To preserve a complaint for appellate review, a party must make a timely and

11

sufficiently specific request, objection, or motion in the trial court. Tex. R. App. P. 33.1. "A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection." Tex. R. Civ. P. 274. During the charge conference, Mohammadi's attorney explicitly objected to Question 1 on the ground that it should ask whether Randalls knew or should have known of the danger. Counsel further objected to splitting the liability issue into two questions and to conditioning Question 2 on the jury's answer to Question 1. He explained to the court that Mohammadi was an invitee and that the jury should be able to consider actual knowledge regardless of its finding on constructive knowledge. Mohammadi also submitted her own proposed Question 1 in substantially correct form. *See Williams*, 940 S.W.2d at 584–85. Mohammadi clearly preserved her appellate arguments regarding the bifurcation and conditioning in the jury charge.

### B. Invitee Status

Randalls next asserts the trial court erred in concluding Mohammadi was an invitee instead of a mere licensee.[3] Generally, a premises-liability plaintiff's status is a question of law, although it can be a jury question when facts relevant to the legal standard are in dispute. *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 829 (Tex. 2021); *see also* Texas Pattern Jury Charges: Malpractice, Premises & Products PJC 66.6. Here, Randalls does not argue that the trial court should have submitted the issue to the jury but appears to assert Mohammadi's status as a licensee was established as a matter of law.

It is undisputed in this case that at the time of the incident, Mohammadi was

---

[3] Randalls licensee argument appears mainly aimed at explaining why it was proper for the trial court to bifurcate the knowledge element, i.e., because there was a legitimate question as to whether Mohammadi was an invitee or a licensee. *See Casteel*, 22 S.W.3d at 389. As will be made clear below, the clarification of Mohammadi's status is also relevant to our disposition of this appeal.

12

working for a subtenant of Randalls, Wells Fargo, and was on her way back from using a Randalls restroom. The record indicates that there was no restroom located in the space leased by Wells Fargo for its employees to use. Although Randalls acknowledges that Mohammadi was an invitee while actively performing her job duties for Wells Fargo, it argues she became a licensee when she undertook the "personal errand" of going to the restroom. As set forth above, the test for whether a plaintiff was an invitee is whether the person entered the owner or occupier's land with the owner or occupier's knowledge, or at its express or implied invitation, and for the mutual benefit of both or for the benefit of the owner or occupier. *See Plasencia*, 440 S.W.3d at 144; *Tex. Genco*, 2006 WL 1389598, at *3. In the absence of some relation that inures to the mutual benefit of the plaintiff and the owner or to the benefit of the owner, the injured party must be regarded as a mere licensee and not an invitee. *Newman*, 2017 WL 2292577, at *8.

Here, there was at least an implied invitation for Mohammadi to use the Randalls restroom as part of the business relationship that linked Randalls, Wells Fargo, and Mohammadi. Randalls would certainly expect that employees of its subtenant would use the restroom facilities available to them inside the Randalls store when there were no such facilities available in the Wells Fargo leased space. Randalls, Wells Fargo, and Mohammadi all benefitted from the subtenant relationship. *See Newman*, 2017 WL 2292577, at *8; *Plasencia*, 440 S.W.3d at 144; *Tex. Genco*, 2006 WL 1389598, at *3.

Randalls relies heavily on *Mayer v. Willowbrook Plaza L.P.*, 278 S.W.3d 901 (Tex. App.—Houston [14th Dist.] 2009, no pet.), which involved murders in a mall parking lot, in support of its contention that Mohammadi was a licensee when she was returning from the restroom. The decedents in *Mayer* were deemed licensees when they were shot and killed in a mall parking lot after their shifts

working at a store in the mall. *Id*. at 913–15. The *Mayer* decedents, however, had left the premises hours earlier to attend a party at another location and only returned to the parking lot around 4 a.m. to retrieve their cars when the shooting occurred. *Id*. at 913-14. Under those circumstances, we explained that although the decedents were initially invitees when they parked their cars for work, by leaving their cars in the parking lot while attending an offsite party, the decedents were using the lot for their own purposes and not for any mutually beneficial business with the mall. *Id*. at 914-15. Here, Mohammadi's leaving the Wells Fargo space to go to the Randalls restroom during her shift and then returning to the Wells Fargo space was more akin to the decedents in *Mayer*'s original use of the parking lot. Just as the decedents parking their cars in the lot in order to work at the mall was a mutually beneficial purpose, so was Mohammadi going to the Randalls restroom. It was necessary for the decedents to park their cars to go to work just as it was necessary for Mohammadi to be able to use the restroom. There was at least an implied invitation for her to do so. *Mayer* therefore supports the trial court's holding that Mohammadi was an invitee at the time and location of her accident.[4] The trial court properly concluded that Mohammadi was an invitee at the time and place of her alleged injuries.

### C. "Logically precluded."

Randalls next argues that the need for the jury to make a finding as to actual

---

[4] Randalls lists a number of other situations it deems analogous to Mohammadi's circumstances, including a person taking a shortcut across a parking lot, a loafer or loiterer, a person entering a business only to get out of the weather, a person who enters a business in search of her children, a tourist visiting a plant at her own request, and a stranger entering an office building to mail a letter, citing *Holder v. Mellon Mortgage Co.*, 954 S.W.2d 786, 798 (Tex. App.—Houston [14th Dist.] 1997), *rev'd on other grounds*, 5 S.W.3d 654 (Tex. 1999) (plurality op.), and W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 60, 413 (5th ed. 1984). Each of these situations, however, is readily distinguishable due to the absence of a mutually beneficial business relationship.

knowledge was "logically precluded" by the jury's answer to the constructive knowledge question.[5] Randalls posits that a person "could have constructive knowledge without actual knowledge" but could not have actual knowledge without constructive knowledge. Randalls does not cite any authority that supports the notion that a lack of constructive knowledge precludes a finding of actual knowledge, and we disagree with Randalls' reasoning.

Randalls cites the descriptions of actual and constructive notice provided by the Texas Supreme Court in *Madison v. Gordon*, which read: "Actual notice rests on personal information or knowledge. Constructive notice is notice the law imputes to a person not having personal information or knowledge." 39 S.W.3d 604, 606 (Tex. 2001) (citing *Flack v. First Nat'l Bank*, 226 S.W.2d 628, 631-32 (Tex. 1950)). In the premises liability context, the supreme court has more specifically explained that "[a]ctual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008) (citing *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006)). Black's Law Dictionary defines "actual" as "[e]xisting in fact; real" and "constructive" as "[l]egally imputed; existing by virtue of legal fiction though not existing in fact." Black's Law Dictionary 42, 380 (10th ed. 2009). As mentioned above, the supreme court has approved the submission of these concepts in premises liability jury charges through asking whether the "defendant knew or reasonably should have known of the danger." *Williams*, 940 S.W.2d at 584–85.

---

[5] The actual knowledge submission was contained in Question 2, which was contingent on a positive answer to Question 1 and thus was not answered.

Texas law therefore treats "actual knowledge" and "constructive knowledge" as distinct inquiries. Constructive knowledge is in effect a substitute in the law for when actual knowledge has not been shown. *See CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102 (Tex. 2000). The approved charge language in *Williams* therefore puts the actual knowledge query first because if the jury determines that a defendant actually knew of a particular danger, there is no reason for the jury to undertake the typically more involved mental calculus of whether the defendant should have known of the danger under the circumstances. 940 S.W.2d at 584–85. Indeed, a finding of either actual knowledge or constructive knowledge could make a finding on the other knowledge inquiry unnecessary, as just one such finding is required to support the judgment in an invitee premises liability case. *See Reece*, 81 S.W.3d at 814.

However, the contrary is not true: a failure to find actual or constructive knowledge does not render the other inquiry unnecessary or immaterial. There may be reasons for a jury to determine a defendant had actual knowledge but not constructive knowledge. For example, a jury could conclude in a particular case that while there was no reasonable expectation under the circumstances that the defendant should know of a danger, the defendant did nonetheless know of the danger. Or a jury could simply conclude that there could be no constructive knowledge, i.e., knowledge implied in law, in light of evidence of actual knowledge in a particular case. *See CMH Homes*, 15 S.W.3d at 102; Black's Law Dictionary 380. We, of course, do not know why this jury answered Question 1 on constructive knowledge "[n]o." As discussed above, if there was evidence presented at trial that Randalls had actual knowledge of a dangerous condition that caused Mohammadi's injury, Mohammadi was entitled to a jury submission on actual knowledge, irrespective of the jury's answer on constructive knowledge. *See*

16

Tex. R. Civ. P. 278; *Triplex Commc'ns*, 900 S.W.2d at 718. We will not speculate on how the jury would have answered an actual knowledge question based on its answer to the constructive knowledge question. *See generally Ex parte T.M.S.*, 652 S.W.3d 130, 135 (Tex. App.—Eastland 2022, orig. proceeding) (noting "appellate courts are not well-suited to" speculate on a jury's thought processes, citing *Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 867 (Tex. App.—Austin 2006, pet. granted, judgm't vacated w.r.m.)). For the forgoing reasons, the jury's negative answer on constructive knowledge did not logically preclude it from making a finding on actual knowledge. We turn now to a review of the evidence at trial to determine if Mohammadi was entitled to a submission on actual knowledge.

### D. Evidence

It was undisputed at trial that Mohammadi was entitled to a submission on actual knowledge if supported by the evidence. *See* Tex. R. Civ. P. 278 (requiring submission of questions on controlling issues of fact supported by pleadings and evidence); *see also Triplex Commc'ns*, 900 S.W.2d at 718. If supported by evidence, a submission on actual knowledge would have been appropriate regardless of whether Mohammadi was an invitee, as she argued, or a mere licensee, as Randalls argued. *See Plasencia*, 440 S.W.3d at 144. Randalls does not dispute that Mohammadi's pleadings supported a submission on actual knowledge.

In examining the record for evidence supporting an actual knowledge submission, we view the evidence and reasonable inferences therefrom in the light most favorable to Mohammadi and disregard evidence and inferences to the contrary unless a reasonable jury could not. *See Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992); *WCW Int'l, Inc. v. Broussard*, No. 14-12-00940-CV, 2014 WL 2700892, at *11 (Tex. App.—Houston [14th Dist.] June 3, 2014, pet. denied)

17

(mem. op.); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "[T]here is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm." *Univ. of Tex.–Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam). Actual knowledge may be established through circumstantial evidence but only when such evidence either directly or by reasonable inference supports that conclusion. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 415 (Tex. 2008).

There was no evidence that a Randalls employee observed any liquid on the floor where Mohammadi slipped and fell before she slipped and fell. There was evidence, however, that Randalls provided open wire shopping carts instead of closed plastic containers for damaged and returned products and set those carts immediately adjacent to a heavily traversed walkway. And there was evidence from which a jury could reasonably conclude that shortly before Mohammadi's accident, a Randalls employee knowingly placed a leaking grocery bag in the part of one of the return carts closest to the walkway and the spot where Mohammadi fell.

The Texas Supreme Court has explained that "even in the absence of evidence showing the storeowner's actual or constructive knowledge of the presence on the floor of the specific object causing the fall," a storeowner still may be liable if the plaintiff can show the storeowner had "knowledge of the foreseeable harm of some course of conduct or method of operation." *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983). In *Corbin*, the plaintiff alleged that he slipped and fell on a grape left on a grocery store floor. In reversing a directed verdict favoring the store, the supreme court held that although there was no evidence the store knew or should have known about a specific grape that caused the plaintiff's fall, the knowledge of an unusually high risk of harm

18

associated with the store's self-serve grape display satisfied the knowledge element. *Id.* at 296; *see also Keetch v. Kroger Co.*, 845 S.W.2d 262, 265 (Tex. 1992) (discussing *Corbin*); *Padilla v. Wal-Mart Stores Tex., LLC*, No. EP-19-CV-4-KC, 2020 WL 1902535, at \*5 (W.D. Tex. Jan. 31, 2020) (explaining that "for *Corbin* to be applicable, the dangerous method identified must pose an 'unusually high risk' of injury, not just a foreseeable one" and holding factfinder could reasonably conclude that snack table setup that resulted in water on floor was an unreasonably dangerous condition); *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 31 (Tex. App.—Tyler 2003, pet. denied) (holding evidence was sufficient to conclude that it was or should have been readily apparent to store that mirror display was unreasonably dangerous from the time created and such evidence supported jury's finding that store knew or should have known of the unreasonably dangerous condition); *Wal-Mart Stores, Inc. v. Diaz*, 109 S.W.3d 584, 587 (Tex. App.—Fort Worth 2003, no pet.) ("The fact that the owner or occupier of a premises creates a condition that poses an unreasonable risk of harm may support an inference of knowledge. The jury must still find, however, that the owner or occupier knew or should have known of the condition.") (Emphasis omitted.)

The supreme court has since cautioned that *Corbin* is an "exceptional case" and "[o]rdinarily, an unreasonably dangerous condition for which a premises owner may be liable is the condition at the time and place injury occurs, not some antecedent situation that produced the condition." *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407-08 (Tex. 2006); *see also Reyes v. City of Laredo*, 335 S.W.3d 605, 609 (Tex. 2010) ("Awareness of a potential problem is not actual knowledge of an existing danger."); *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (per curiam) (explaining that the "actual knowledge" required for

liability "is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time"). The facts in *Brookshire* revolved around a self-service drink dispenser in a grocery store. 222 S.W.3d at 407. The *Brookshire* court distinguished *Corbin* because "[n]o evidence suggested that the soft drink dispenser was set up in such a way that ice on the floor was a greater danger than one would ordinarily encounter with such dispensers, or that customers, though prone to spills, were any more prone around this dispenser." *Id*. at 408. The court then concluded that "[t]he only unreasonably dangerous condition in [*Brookshire*] was the ice on the floor," of which the store had neither actual nor constructive knowledge. *Id*. at 409.

The facts of the present case are more akin to the situation encountered in *Corbin* than that addressed in *Brookshire*. *See Padilla*, 2020 WL 1902535, at *5-6 (discussing how to analogize to and distinguish between *Corbin* and *Brookshire*). As mentioned above, although there was no evidence that any Randalls employee visually observed any liquid on the spot where Mohammadi fell prior to her fall, considering the evidence and reasonable inferences therefrom in the light most favorable to Mohammadi, there was at least some evidence Randalls had actual knowledge of an unreasonably dangerous condition at the time and place of Mohammadi's fall. We know from Wilmore's testimony that Randalls required its employees to place damaged items in an open wire cart immediately adjacent to a heavily trafficked walkway and that if a leaking product was placed in that cart, the liquid would drip to the floor in that area. It can also be reasonably surmised from the surveillance video and accompanying testimony of several witnesses that less than eight minutes before Mohammadi slipped and fell, a Randalls employee knowingly placed a leaking bag into the backmost part of the cart (the child seat), immediately adjacent to the spot where Mohammadi slipped and fell. From this

20

evidence, a reasonable jury could conclude that Randalls had actual knowledge of an unreasonably dangerous condition posing an unusually high risk of injury which led directly to Mohammadi's injury. In other words, the evidence could be reasonably interpreted as demonstrating that a Randalls employee following Randalls policy undertook a course of conduct or method of operation that created a condition posing an unreasonable risk of harm that directly and foreseeably led to Mohammadi's injury and Randalls thus had "knowledge of the foreseeable harm of some course of conduct or method of operation." *Corbin*, 648 S.W.2d at 295.

Indeed, if anything, the immediacy of the foreseeable harm from the method or operation was greater in this case than in *Corbin*. Placing a leaking bag in a shopping cart beside a walkway would likely require less time to result in injury than a grape display that would require not only time but the actions of third parties, customers, in spilling grapes out of the display and onto the floor.

Mohammadi was entitled to a jury submission on actual knowledge. The trial court erred in depriving her of that submission by bifurcating the knowledge element for an invitee premises liability claim and conditioning the jury's response to the actual knowledge question on a positive response to the constructive knowledge question. *See Washington*, 581 S.W.2d at 160; *Thedford Crossing*, 306 S.W.3d at 866; *Varme*, 881 S.W.2d at 881. We now must consider the proper disposition of this appeal.

## IV.   Disposition

As noted above, Mohammadi suggests that the trial court's bifurcation and conditioning errors tainted the entire charge, requiring remand of not just the actual knowledge submission but the constructive knowledge submission as well. We agree. As discussed, we do not know why the jury answered the constructive knowledge question in the way that it did. The jury did send out a note, stating

21

"[i]s it true that if we don't get 10 [jurors] to answer #1 can we answer #2[?]" It is not entirely clear what was behind the note, but it appears the jury was curious as to whether they were supposed to answer the actual knowledge question in light of their "no" response to the constructive knowledge question. As discussed above, it is possible a jury could conclude that there was no constructive knowledge under the circumstances presented because Randalls had actual knowledge of a dangerous condition that it created. Indeed, the Texas Supreme Court has explained that "[c]onstructive knowledge is a substitute in the law for actual knowledge." *CMH Homes*, 15 S.W.3d at 102; *see also* Black's Law Dictionary 380 (defining "constructive" as "[l]egally imputed; existing by virtue of legal fiction though not existing in fact").

A new jury looking at the evidence in this case could reasonably conclude that Randalls, through its employees, either actually knew about an unreasonably danger condition or should have known. Given the trial court's charge errors, it would not be fair or reasonable to restrict Mohammadi to attempting to prove only actual knowledge on remand. Accordingly, on remand, both actual and constructive knowledge should be at issue.

We therefore sustain Mohammadi's three issues, reverse the trial court's judgment, and remand for further proceedings.


/s/     Frances Bourliot
          Justice


Panel consists of Chief Justice Christopher and Justices Bourliot and Spain. (Christopher, C.J., dissenting).

22